**James R. TAYLOR**

v.

**UNITED STATES of America.**

**Cr. No. 1660-52.**

United States District Court
District of Columbia.

Dec. 18, 1954.

v. Cutter Laboratories, D.C., 78 F.Supp. 903; Grobengieser v. Clearfield Cheeso Co., D.C., 94 F.Supp. 402; De Vito v.

Arthur J. McLaughlin, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Dominic St. Angelo, Washington, D. C., for defendant.

TAMM, District Judge.

The defendant Taylor has filed a motion to vacate sentence on the ground that he was denied his right to the effective assistance of counsel as guaranteed under the Sixth Amendment. New counsel was appointed by this Court, and a hearing on the motion and examination of the testimony at the trial revealed the following information.

On September 8, 1952, one Bernard Monroe was indicted for grand larceny and unauthorized use of a vehicle. It appears that Monroe through his attorneys, Mr. and Mrs. Dwyer, was brought to the attention of the then Assistant United States Attorney Wadden in charge of narcotic law enforcement, and that Monroe began working for Wadden as an informer agent, one result of this alliance being an alleged narcotic purchase by Monroe from Taylor, from which Taylor's present conviction resulted. The latter was indicted on October 4, 1952 for the narcotics violation and was also represented by the Dwyers. The criminal case against Monroe was dismissed by the Government about three weeks *before* Taylor came to trial, but at the time of the trial the Dwyers still continued to represent Monroe in a civil suit previously filed by him.

The dual representation of the Dwyers was brought to the trial court's attention

United Air Lines, D.C., 98 F.Supp. 88; Peterman v. Indian Motorcycle Co., 1 Cir., 1954, 216 F.2d 289.

on the second day of the Taylor trial, and also to the attention of the jury on cross-examination of Monroe by the Dwyers, Monroe being of course a witness against Taylor. After his conviction, Taylor, through the Dwyers, filed notice of appeal, consulted with the Dwyers and another attorney brought in by them in regard to the appeal, and also consulted with an attorney, Marshall, appointed by the Court of Appeals to look into his case. The appeal was finally dismissed by agreement of the Government, Mr. Marshall, and the defendant Taylor himself on May 20, 1953. On October 20, 1954, defendant wrote this Court a letter including his present motion. He charged the Dwyers with concealing from him the fact of their representation of Monroe and of having sacrificed him, Taylor, for the benefit of Monroe.

The Court is requested to determine whether there was a failure of adequate representation by counsel that deprived Taylor of a fair trial,[1] or whether the record discloses that the Dwyers' representation of Taylor was ineffective because of the Dwyers' representation of Monroe.[2]

At one period of time, the Dwyers were counsel for Monroe in both a criminal and civil proceeding when, at the same time, they were also representing Taylor. At the time of Taylor's trial, they were still representing Monroe in a civil suit, but the criminal case against Monroe had been dismissed. They were also admittedly instrumental in arranging, and consequently aware of, Monroe's contact with Assistant United States Attorney Wadden.

The record of the trial discloses that the fact of dual representation of both the defendant Taylor and the key witness Monroe were brought out in detail before the jury. On cross-examination of Monroe, the Dwyers accused him of having told them, as his attorneys, an entirely contradictory story before the trial than he was telling on the witness stand. The Dwyers were permitted by the Court to cross-examine Monroe upon the basis of the information they received from him as his attorneys. Certainly this would seem to more favor the defendant than to prejudice him.

In his motion to vacate, Taylor alleges that he knew nothing of the conflict of interest *until the time of his trial* when it "was clearly brought to light by the questioning of the Government witness, Bernard Linwood Monroe, by the Asst. U. S. Attorney." Thus, Taylor had available on December 9, 1952 the same information that he now submits under his motion. Yet he offered no objection at the trial, retained the same counsel on appeal, and never mentioned any such charges to the attorney brought into the case by the Dwyers, or to the attorney appointed by the Court of Appeals.

In his affidavit of November 29, 1954, Taylor stated that he had lost "faith" in the Dwyers when his appeal was dismissed with his consent on May 20, 1953. There is no hint anywhere in the record until October 18, 1954, over 22 months after learning the facts, that Taylor considered himself prejudiced by the dual representation. Although Taylor, by affidavit, states that he never knew of the dual representation until the time of his trial, Mrs. Dwyer has alleged by answering affidavit that not only was the association with Monroe known to Taylor before he hired them, but that he hired them *because* of that association in the hope that the Dwyers could work out a "deal" for him with the Assistant United States Attorney or could get information from Monroe pertaining to his (Taylor's) case.[3]

1. District of Columbia v. Scott, D.C.Cir., 214 F.2d 860.
2. Glasser v. U. S., 315 U.S. 60, 76, 62 S. Ct. 457, 86 L.Ed. 680.
3. "District of Columbia, ss:
    "Comes now Jean F. Dwyer, and being

duly sworn on oath, deposes and says that she is the same Jean F. Dwyer who, together with her partner, John J. Dwyer, represented James R. Taylor in the above numbered case; that it is her recollection that she saw Taylor before

The legal ethics involved in this unfortunate situation are not before this Court which is concerned on this motion with the actions of the attorneys only as they might have affected the right of the defendant to the effective assistance of counsel. This Court finds nothing in the record to indicate that the Dwyers could or should have conducted the trial other than they did because of their association with Monroe. Under all the circumstances, there was no such failure of representation which deprived Taylor of a fair trial. As stated in the Scott case[4]: "The decision here certainly should not be taken as a holding that a defendant can escape justice merely by hiring a lawyer who represents, in another case, a witness against that defendant."

A chronological outline of the events is set forth in the margin.[5]

Defendant's motion to vacate sentence is denied.

Mr. Dwyer did, in the District of Columbia Jail; that at the first interview she had with him, Taylor advised her that Bernard Monroe was involved in his case, whereupon she immediately informed him that Monroe had been a client of her firm. That Taylor, in turn, told her that was why he wanted to be represented by the Dwyers, in the hope that they could arrange some sort of a deal whereby he cooperated with the U. S. Attorney's office, similar to the arrangement Monroe had had; or, failing that, he hoped that Monroe could be persuaded to tell the truth about his transaction to your affiant or her partner. She further says that Taylor knew that the Dwyers represented Monroe before she ever talked with him; and certainly before any fee was ever paid for a retainer.

"/s/ Jean F. Dwyer

"Jean F. Dwyer"

4. District of Columbia v. Scott, supra.

5. July 29, 1952: Bernard L. Monroe (and Kenneth Willis) held for action of Grand Jury. Bond set for each at $1,500.

Aug. 22, 1952: John Dwyer filed motion to reduce bond in re Monroe.

Aug. 25, 1952: Stanley Dietz filed motion to reduce bond re Monroe.

Aug. 26, 1952: Monroe bond reduced by Judge Bastian to $500 (no objection by Gov.).

Sep. 5, 1952: Penciled note by Monroe filed in jacket stating that he no longer wished to retain Mr. Deitz and that Mr. Dwyer was his attorney.

Sep. 8, 1952: Monroe and Willis indicted by Grand Jury for Gr. Lar. (television) and U. U. V.

Sep. 12, 1952: Plea Not Guilty. Jean Dwyer present.

Sep. 25, 1952: Monroe released on $500 bond.

Oct. 29, 1952: Taylor indicted for narcotic violations occurring on *Oct. 4,* with Monroe.

Oct. 31, 1952: Motion for reduction of bond of $5,000 filed by Jean Dwyer.

Nov. 7, 1952: Praecipe entering appearance of Jean Dwyer filed.

Nov. 13, 1952: Arr. Taylor plea not guilty; Jean Dwyer present.

Nov. 14, 1952: Monroe's co-defendant (Willis) found insane and committed.

Nov. 20, 1952: Gov.'s oral motion to dismiss indictment against Monroe granted.

Dec. 8, 1952: Jury trial against Taylor commenced. Cross-exam of Monroe started.

Dec. 9, 1952: Trial resumed; Mr. Dwyer at bench conference told judge about representing Monroe.

Dec. 10, 1952: Taylor verdict—guilty as indicted.

Dec. 12, 1952: Taylor sentenced 20 mos. to 5 years on each count concurrently.

Dec. 22, 1952: Taylor's notice of appeal filed by John Dwyer and Samuel Green.

May 20, 1953: Agreement of dismissal of Taylor's appeal by Gov. and deft. (signed by deft. and Burke Marshall as atty. for appellant).

June 11, 1953: Motion for reduction of sentence filed by Jean Dwyer.

Oct. 20, 1954: Letter to Judge Tamm including motion to vacate sentence on ground of inadequate representation by counsel.