Jasen, J.
The sole question presented upon this appeal is whether the appellant was deprived of his constitutional right to the effective assistance of counsel.
Appellant and his codefendant, Efrain Bodriguez, were arrested on June 11, 1967, and subsequently charged in two indictments with the crime of murder in the first degree, the crimes of assault in the first, second and third degree, and illegal possession of a deadly weapon. After a jury trial both of the accused were acquitted of the murder charge, but were convicted of the other charges.
On June 10, 1967, about 10 individuals, including appellant and Bodriguez, were engaged in a game of craps. The game had been in progress for some time when one Lorenzo Kindred and a friend of his, Frank Glover, joined the game. They played for approximately 15 to 20 minutes, after which the game ended with Kindred and Glover the principal winners. An argument thereupon ensued, in the presence of appellant, between Bodriguez and Kindred, in which Bodriguez, complaining that “ crooked” dice were used in the game, demanded the return of his money.
Precisely what occurred after the commencement of that argument, which resulted in the killing of an innocent bystander, was sharply disputed at the trial. The People’s evidence, consisting primarily of the testimony of Kindred and several other witnesses who observed the argument and subsequent events, tended to establish that Bodriguez pulled out a gun and started shooting at Kindred, and that appellant also shot at Kindred in addition to physically assaulting him. At the close of the People’s case, appellant took the stand and gave his version of the events. He claimed that Kindred fired the initial shots. While he denied shooting at any time at Kindred, appellant did state that he tried to restrain Kindred 11 so that he could not keep on firing.” The appellant’s version as to how the shooting started, and his actions following it, were substantiated by the testimony of three witnesses.
Upon this evidence, the jury acquitted both defendants of the murder charge, but convicted them of the other afore-mentioned charges.
*31 On this appeal, the appellant asserts that the trial court, in permitting him to share a retained attorney with his codefendant, deprived him of his constitutional right to the effective assistance of counsel. Specifically, appellant contends that early in the trial a conflicting interest became apparent between him and his codefendant which required the court to take necessary steps to protect his right to effective representation.[1] Appellant does not suggest that this court adopt the rule in Ford v. United States (379 F. 2d 123), which presumes a conflict of interests when two or more defendants are represented by one attorney. What appellant does seek is that we examine the conflict of interests which he claims existed with respect to this appellant, and apply the applicable and previously announced constitutional rules thereto. In support of this view, he cites Glasser v. United States (315 U. S. 60); United States v. Hayman (342 U. S. 205); United States ex rel. Williamson v. La Vallee (282 F. Supp. 968); and Taylor v. United States (226 F. 2d 337, revg. 126 F. Supp. 764).
In Glasser v. United States (supra), the Supreme Court in setting aside a conspiracy conviction against the defendant Glasser, addressed itself directly to the Sixth Amendment ramifications of joint representation. Glasser and another defendant, Kretske, were represented at the trial by the same attorney, although Glasser had objected to sharing his lawyer with Kretske. Despite Glasser’s objection and the attorney’s notice to the court that the defenses may be inconsistent, the Trial Judge, nevertheless, designated Glasser’s personal attorney as counsel for codefendant Kretske. After enumerating the various ways in which Glasser had been significantly prejudiced, the Supreme Court determined that his Sixth Amendment rights had been violated.[2] The rule that emerged from Glasser is that where a conflict of interests is shown, the courts need not precisely calculate the degree of prejudice in order to find a violation of Sixth Amendment rights. (See, also, Common *32 wealth ex rel. Whitting v. Russell, 406 Pa. 45, 48; People v. Ware, 39 Ill. 2d 66, 68; State v. Tapia, 75 N. M. 757, 760.)
In United States v. Hayman (supra), a principal witness against the petitioner was a defendant in a related case wherein she had pleaded guilty but testified against the petitioner before sentence, and was represented by the same attorney as the petitioner. Likewise, in United States ex rel. Williamson v. La Vallee (supra), the attorney for the petitioner also represented an important prosecution witness, a defendant in another case. In Taylor v. United States (supra), the petitioner was represented by counsel also representing the prosecution’s witness, an informer, as a defendant in another case.
One need not tax his imagination to detect the potential dangers that faced the petitioners in these cases when defended by an attorney who is also representing an important prosecution witness as a defendant in another case. In all of the cases relied upon by the appellant, a persuasive showing of a conflict of interests was made. (Cf. People v. Wilkins, 28 N Y 2d 53.) The holdings are consistent with the rule that has developed that ‘ ‘ an appellant must show some conflict of interest between himself and the other defendants represented by his attorney before he can claim successfully that the joint representation deprived him of his right to counsel.” (United States v. Bentvena, 319 F. 2d 916, 937 [2d Cir.]; Glasser v. United States, 315 U. S., at pp. 72-76; United States v. Dardi, 330 F. 2d 316, 335 [2d Cir.], cert. den. 379 II. S. 845; Gonzales v. United States, 314 F. 2d 750, 752 [9th Cir.]; Englehart v. Commonwealth, 353 Mass. 561, 562; People v. Dolgin, 415 Ill. 434, 448; cf. People v. Wilkins, 28 N Y 2d 53, 55-56, supra.)[3]
But, even where such a conflict of interest is found to exist and, as a result, one of the defendants is prejudiced, this does not automatically inure to the benefit of his codefendants, unless they, too, were in some manner harmed by the fact that they were represented by the same attorney. (Kruchten v. Eyman, 406 F. 2d 304; Janovic v. Eyman, 406 F. 2d 314; Campbell v. *33 United States, 352 F. 2d 359; cf. People v. Byrne, 17 N Y 2d 209, 216.) In the Campbell case, for instance, the court reversed the conviction of Glenmore, one of the defendants, for the reason that he had been “clearly prejudiced” (p. 361) by the joint representation, but affirmed the conviction of Campbell, his codefendant, stating (p. 361): “we are unable to perceive anything indicating that his defense suffered from sharing an attorney with Glenmore.”
In the ease before us, we conclude that there was no apparent conflict of interest between the appellant and his codefendant. Contrary to appellant’s contention, both defendants had the same interest in discrediting the testimony of the People’s witnesses. Several of these witnesses testified that both defendants shot at Kindred and later beat him. It is immaterial that other witnesses for the People did not see a gun in appellant’s hand, but did see one in the codefendant’s hand, since both defendants were accused in the indictments with ‘[1] acting in concert ’ ’ and ‘ ‘ aiding and abetting ’ ’ each other in the commission of the crimes charged. The evidence is undisputed that after Rodriguez started shooting at Kindred, appellant remained with Rodriguez throughout the fracas and continued his active participation in pursuit of Kindred, culminating in appellant’s seizure of Kindred, beating him and disarming him. At this point his own testimony reveals that he threw away Kindred’s gun and continued to pursue him after Rodriguez had fired four or five shots at Kindred. It should be obvious that even if we were to assume arguendo that the appellant had no gun, the evidence is overwhelming that he actively participated with Rodriguez in pursuing Kindred after he was made aware of the firing of a gun by Rodriguez directed at Kindred. Thus, we can perceive of no conflict in the joint representation of the appellant and Rodriguez as both had the same interest in discrediting the testimony of the People’s witnesses, and it is to be noted their lawyer pursued that course vigorously through cross-examination and the use of prior inconsistent statements.
Appellant also argues that his attorney was unable in summation to argue that ‘ ‘ Rodriguez assaulted Kindred, but that appellant was innocent of any assault on Kindred ” because he also represented Rodriguez, and, consequently, a conflict of interest was present. The record, however, shows that counsel, *34 in addition to arguing that Rodriguez acted in self-defense, did, in fact, contend that appellant never shot at Kindred, and that he never assaulted him, “ Gonzalez’s involvement in the case was only to the extent of an impulse to go to the aid of Rodriguez thinking that he was hurt, and to wrest the gun from Kindred and nothing else.”. In no respect did the individual defenses of appellant and his codefendant run afoul of each other, nor did the efforts of counsel on behalf of Rodriguez interfere with appellant’s defense.
In sum, a careful review of the record discloses no conflict of interests. To the contrary, the record establishes that counsel was thorough and diligent in preparing this case and protecting the interests of his clients. A finding of a conflict here, in effect, would be tantamount to a holding that joint representation is, per se, a denial of effective assistance of counsel, a result not dictated by the Sixth Amendment. Moreover, for the Trial Judge to have intervened in this case (see Glasser v. United States, 315 U. S., at pp. 71-72; People v. Byrne, 17 N Y 2d, at pp. 215-216) would have been an entirely unwarranted interference with the attorney-client relationship and might well have constituted an infringement upon the defendant’s right to retain counsel of his own choosing. (Cf. Chandler v. Fretag, 348 U. S. 3, 9; Powell v. Alabama, 287 U. S. 45, 53; People v. Silverman, 3 N Y 2d 200, 202; People v. Price, 262 N. Y. 410, 412.)
The order should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Gibson concur.
Order affirmed.

. At no time during the trial did the appellant, his codefendant, or their lawyer complain that their defense was hampered by the fact that they were jointly represented.

. The court, however, sustained Kretske’s conviction, as there was no showing that he had been prejudiced by the joint representation.

. See, also, United States v. Youpee (419 F. 2d 1340, 1345-1346 [9th Cir.]); United States v. Long (415 F. 2d 307, 308 [6th Cir.]); Curry v. Burke (404 F. 2d 65, 67 [7th Cir.]); State v. Reppin (35 Wis. 2d 377, 386-387); Commonwealth ex rel. Corbin v. Myers (419 Pa. 139, 141, 423 Pa. 243, cert. den. 386 U. S. 1013).