■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN P. RAGONESI, JR., Appellant.—Appeal by defendant from a judgment of the County Court, Westchester County, rendered March 9, 1977, convicting him of burglary in the third degree, petit larceny and criminal mischief in the fourth degree, upon a jury verdict, and imposing sentence. Judgment affirmed. At approximately 9:00 P.M. on October 25, 1976, Roger Park, while sitting in his living room, heard a "metal to metal" noise which appeared to be emanating from a warehouse situated on his property. Upon opening his window, Park saw a flashlight beam which was directed at the warehouse door. Judging from the location of the beam and the source of the noise, he surmised that two people were outside. His wife telephoned the police and he walked outside to ascertain whether any part of his property had been damaged. While standing in front of his house, he saw a car, with its trunk open, leave his driveway "at an excessive speed". Park, who was in the automobile business, identified the car as a 1967 or 1968 Oldsmobile. Within a minute a police car, driven by Police Officer Grant, arrived at Park's house. While en route to the house, Grant had passed an "older model Oldsmobile". He called Officer Coviello, who was in another police car which was several car lengths behind his, and told him to follow the Oldsmobile. Coviello had noticed that the trunk of the car was open and he observed that the license plate bore the letters "WOF". Coviello turned his vehicle around and pursued the Oldsmobile. A high-speed chase ensued. Officer Grant and a third police officer joined in the pursuit. The police officers lost sight of the car several times. At one point, after the Oldsmobile had executed a right-hand turn, Coviello drove past it. As he did, Coviello saw that the car had stopped and he observed two men standing behind it holding a long yellow object. Eventually, the Oldsmobile was stopped by Officer Grant. It was a 1967 or 1968 model, license plate number 49 WOF. Ragonesi and his codefendant at the trial, Jeffrey Triano, were its occupants. Within a short time, Coviello returned to the location where he had spotted two men standing behind the car. A long yellow heater and a red pump were found alongside the road. Other evidence which was adduced at the trial showed that these items had been the property of Gunite Pools, which had leased the warehouse on Park's property. Both Ragonesi and Triano were former employees of Gunite Pools; they had never been given authority to enter the warehouse at night. At the trial the People offered the testimony of Park, the police officers and the partners of Gunite Pools.

One of the partners testified, over defense counsel's objection, that some two months after the incident, he spoke with Triano on the telephone and Triano said that he was sorry if he had inconvenienced him. Triano took the stand in his own defense and stated that he and his friend Ragonesi had been out taking a drive at the time of the burglary. The car had been speeding when he first saw a police vehicle behind him. Fearing that he would lose his license if he received another speeding ticket, he accelerated in an attempt to get away from the police. On cross-examination Triano admitted having had a conversation with his former employer some time after the incident. The employer had remarked that he was sorry for all this inconvenience and Triano had replied: "Yes, I am, too." Ragonesi also testified at the trial, repeating, in most respects, Triano's explanation of the events of October 25, 1976. Both men denied having entered the warehouse during the night in question. We agree with our dissenting brethren that Ragonesi and Triano, who were represented at the trial by the same attorney, should have been warned by the Trial Judge of the risks which inhere in such a course (see *People v Gomberg,* 38 NY2d 307). It is our opinion, however, that *Gomberg* does not require a reversal in these circumstances. Ragonesi and Triano presented precisely the same defense at the trial (see *People v Gomberg, supra,* p 312; *People v Ostin,* 62 AD2d 1004). The only area of potential conflict concerned the statement which Triano had made to his former employer. That statement was plainly admissible since Triano, the declarant, testified at the trial (see *Nelson v O'Neil,* 402 US 622; *People v Anthony,* 24 NY2d 696). If there had been some exculpatory explanation for the statement, defense counsel had the opportunity to bring out the pertinent facts on redirect examination. Obviously, Triano had at least as much to gain from such an examination as did Ragonesi. There is nothing to suggest that an explanation of the statement could have been exculpatory with regard to Ragonesi, but not Triano. Indeed, Ragonesi and Triano admitted that they had been together during the time in question. We note, moreover, that the statement, particularly as Triano recalled it, was essentially equivocal. Given the overwhelming evidence in favor of the prosecution, we fail to see how it could have prejudiced the appellant (see *People v Crimmins,* 36 NY2d 230). Some errors were committed during the prosecutor's cross-examination of Ragonesi, although we do not consider them to have been so serious as to require reversal. On one occasion, the Assistant District Attorney asked Ragonesi if he had made any statements to the arresting officer. No objection to the question was made and Ragonesi answered "no". The question was plainly improper, but was of minor importance (cf. *People v Von Werne,* 41 NY2d 584, and *People v Joyner,* 54 AD2d 966, where the improper questions were asked during the direct examination of the arresting officer and were emphasized by subsequent statements of the prosecutor). Another error occurred when the prosecutor questioned Ragonesi about a prior burglary conviction, which was the result of a guilty plea. Ragonesi admitted having taken part in the burglary. The prosecutor, however, persisted in questioning Ragonesi with regard to the underlying facts and, at one point, asked whether he had driven away from the burglarized house with. a stolen television in his car's open trunk. Although inquiry into the underlying facts of the prior conviction was proper (see *People v Reed,* 56 AD2d 896, mot for lv to app den 42 NY2d 830), no legitimate purpose was served by this particular line of questioning. Indeed, it may have been designed to demonstrate a *modus operandi,* to wit, that Ragonesi habitually drove away from his burglaries carrying the loot in the open trunk of his car. We find it inconceivable, however, that the jury

could have relied on that unimportant detail in reaching its verdict. It is significant, moreover, that the defense attorney, who, at the *Sandoval* hearing strenuously objected to the introduction of his client's prior convictions, did not object to this particular line of questioning. Martuscello, Latham and Damiani, JJ., concur; Hopkins, J. P., and Gulotta, J., dissent and vote to reverse the judgment and order a new trial, with the following memorandum: The defendant, Ragonesi, was convicted of the crimes of burglary in the third degree, petit larceny and criminal mischief in the fourth degree. The defendant was tried with a codefendant, Jeffrey Triano. Both were represented at the trial by the same counsel. Both defendants testified. The prosecution, as part of its direct case, elicited testimony from an owner of the business claimed to have been burglarized that some time after the incident he had called Triano on the telephone and, in the course of their conversation, Triano had said, in substance, that he was sorry if he had caused any inconvenience. The defendants' counsel objected to the testimony on the grounds both of lack of notice and relevancy. The objection was overruled. Later, upon taking the stand, Triano acknowledged that he had had a conversation with his employer. The evidence against Ragonesi was largely circumstantial. The joint representation of Ragonesi and Triano by the same counsel raised difficult questions in the light of the admission which the prosecution used to establish guilt. The admission was, of course, not binding on Ragonesi, yet the jury could not easily dismiss it, especially when the jury might conclude that Ragonesi's interests were the same as Triano's since they were represented by the same counsel. Moreover, counsel was placed in an untenable position in which he was forced to choose between the two defendants when Triano testified—should he cross-examine Triano on behalf of Ragonesi (cf. *Nelson v O'Neil,* 402 US 622, 627). The perplexities inherent in this situation highlight the determination of the Court of Appeals in *People v Gomberg* (38 NY2d 307, 314), that defendants represented by the same counsel should be warned by the court of the risks involved, so that their decision to have the same counsel may be an informed and intelligent one. That warning does not appear to have been given to Ragonesi at, or preliminary to, the trial. Nor does it appear that Ragonesi was made aware by the prosecution of the existence of Triano's admission prior to the trial. Knowledge of the admission could have had a profound effect upon the decision to proceed with the same counsel. In addition to the foregoing, the prosecution, in cross-examining Ragonesi, improperly inquired as to whether the latter had made any statement to the arresting officer, which question Ragonesi answered in the negative. That question constituted error (see *People v Von Werne,* 41 NY2d 584) and may be considered by our court even in the absence of a timely objection (see *People v Joyner,* 54 AD2d 966). The postarrest silence of a defendant may not be used against him (see, e.g., *People v Rothschild,* 35 NY2d 355, 359). It was also improper for the prosecution to cross-examine Ragonesi concerning the details of a readily-admitted prior conviction for burglary and to establish, before the jury, the fact that in the previous case, as in the case at bar, the object stolen from the burglarized premises was placed in the trunk of the "get-away" car and was too large to permit the trunk lid to be closed. The introduction of that information in such detail, clearly exceeded the legitimate impeachment purposes of cross-examination into the prior criminal acts of a witness and could only have been intended to demonstrate a factual similarity between the *modus operandi* employed in the prior burglary and that employed in the case on trial. The *modus operandi* was in no way unique and, therefore, cannot be considered independently admissi-

ble on the issue of identity (see *People v Condon,* 26 NY2d 139). Ragonesi was further prejudiced by the receipt, over objection of certain hearsay evidence on the prosecution's direct case which had the effect of bolstering the testimony of Police Officer Coviello, a principal witness for the prosecution. The aggregation of those errors requires a reversal and a new trial.