## (May 24, 1979)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERNEST W. RIECK, Appellant.—Appeal from a judgment of the County Court of Rensselaer County, rendered April 14, 1977, upon a verdict convicting defendant of burglary in the second degree. On July 16, 1976, the County Court of Rensselaer County arraigned defendant Ernest Rieck upon a sealed indictment which contained three counts charging defendant with burglary in the second degree, rape in the first degree and sodomy in the first degree. At the trial, Vivian De Maria, a 40-year-old woman who lived alone, testified that on April 29, 1976 she went to sleep at about 9:00 P.M. and was awakened about 2:30 A.M. by the sound of rattling venetian blinds in an adjoining bedroom. She heard footsteps and got up to investigate. Before she reached the bedroom door, it opened and a figure loomed in the doorway with a stocking over his head. She screamed, and was knocked to the floor. The assailant threatened to kill her with a knife if she made any noises; she felt a dull metal object against her right arm, though she did not see what it was. She further testified that the assailant then tied her hands behind her back and proceeded to rape and sodomize her. Mrs. De Maria was unable to identify her attacker to the police. She testified that during the course of her conversation with them, the name of Charles O'Konski, a Troy police officer, was mentioned as a possible suspect. However, Mrs. De Maria stated that she did not believe it was he. She also testified that she went to the police station later that night and unsuccessfully "tried to make a statement—I had an instinct that Mr. Rieck was the person who committed the crime, although I had no basis, it was just an instinct and I wanted to make a statement. I wanted something done." Before she returned to the police station on Monday, a Troy police officer, who was an old friend of Mrs. De Maria, visited her on Sunday night and gave her "indications that the fingerprints and person that committed the crime was Mr. Charles O'Konksi". Mrs. De Maria returned to the police station on Monday, and this time did execute a sworn statement, identifying O'Konski as her assailant. "I know this person to be Charles O'Konski", recited the statement, but "I did not identify Charles O'Konski before because I am afraid of him. I am still afraid but I think [it] is the best thing to do." However, based upon information obtained from the FBI, finger and palmprints' taken in the victim's apartment were identified as belonging to the defendant and not

O'Konski. The police went to the defendant's apartment and interrogated him as a result of which he made a written statement in which he denied that he had ever been in Mrs. De Maria's apartment. After lengthy deliberations, the jury acquitted defendant of the rape and sodomy charges, but convicted him of the burglary charge. He was sentenced to an indeterminate term of zero to seven years. Defendant raises several contentions of error, two of which, in our view, are serious and require reversal and a new trial. We agree that the defendant was improperly denied a *Huntley* hearing. Prior to the trial, he moved to suppress the statement that he had given to the police upon the ground that it was obtained involuntarily within the meaning of CPL 60.45. The trial court improperly denied the motion, reasoning that the defendant did not present a "factual showing" which would entitle him to a hearing. Where, as here, a suppression motion is made on the basis of involuntariness, a factual showing is not required to obtain a hearing (CPL 710.60, subd 3, par [b]). The People concede this, but argue that since the defendant failed to renew his motion as permitted by the court, he waived his right to a hearing. We disagree. None of the cases cited by the People support their contention, since in each of them, no pretrial suppression motion was ever made (see, e.g., *People v Kenneally,* 50 AD2d 949). Moreover, the People's reliance upon *People v Spatarella* (34 NY2d 157) is misplaced, since there, the suppression motion which was denied without a hearing, was not based upon involuntariness. Furthermore, *Spatarella* strengthens the defendant's position, since the Court of Appeals pointed out that had involuntariness been alleged, a hearing would have been required. Finally, we reject, as wholly without merit, the People's contention that the error was harmless and not prejudicial. The People characterize the defendant's statement, in which he stated that he was never in Mrs. De Maria's apartment, as "neutral" and argue that it did not by itself prove that defendant committed the crime. This, however, ignores the fact that false statements have evidentiary value since they show consciousness of guilt (see *People v Benzinger,* 36 NY2d 29, 33), and, further, that the People relied upon the statement to help establish the defendant's guilt. Therefore, this constitutional error requires reversal, since we cannot say beyond a reasonable doubt that it did not contribute to the conviction (see *People v Evans,* 43 NY2d 160, 167). Reversible error was also committed when Mrs. De Maria was permitted to testify that, based upon her "instinct", she believed the defendant was the perpetrator. Although she could not identify her assailant, she testified that it "might possibly" be the defendant, based only on her "woman's intuition". A witness' identification need not be positive but cannot be based upon pure conjecture (Richardson, Evidence [10th ed], § 464), as occurred here. The identification testimony should, therefore, have been excluded. The People again rely on the "harmless error" rule, arguing that Mrs. De Maria's testimony was harmless since she had already identified O'Konski in a sworn statement. We find this wholly unpersuasive. Errors which are not of constitutional magnitude require reversal where there is a "significant probability * * * that the jury would have acquitted the defendant had it not been for the error" *(People v Crimmins,* 36 NY2d 230, 242). Although Mrs. De Maria's identification testimony was inconsistent with her prior sworn statement, the verdict indicates that in a close case such as this, a significant probability existed that the defendant would have been acquitted had it not been for this error. Although the "instinct" identification testimony was received without objection, in the interest of justice it too requires a reversal and new trial (see CPL 470.15). We have examined defendant's contention that the guilty

verdict on the burglary charge was repugnant with the acquittal on the rape and sodomy charges, and find it to be without merit. Since the counts of the indictment have different basic elements, the verdicts were merely inconsistent (see *People v Speach,* 49 AD2d 210, 213). Likewise, we find no merit in defendant's contention that the chain of custody of the palm and fingerprints was not adequately established by the prosecution. Although the proof was "less than might have been desired, such weaknesses as were made to appear in the evidence went only to its weight, not to its admissibility, and were not such as to create a reasonable doubt as to defendant's guilt" *(People v White,* 40 NY2d 797, 800). Judgment reversed, on the law and in the interest of justice, and a new trial ordered. Mahoney, P. J., Greenblott, Kane, Main and Mikoll, JJ., concur.