Gabrielli, J.
(dissenting). The orders of the Appellate Division should be affirmed and the defendants’ convictions should be sustained in every respect. Therefore, I dissent from the holding by the majority.
It is appropriate to set forth a brief description of what occurred when the defendants entered the motel premises owned by the victims Donald and June Hauffe, with the obvious intention of retaliating for whatever occurred to defendant Macerola’s mother, who apparently had become involved in an altercation on the premises a few nights before. Maceróla sought out the owner, Donald Hauffe, and began to abuse him. Hauffe, frightened by his demeanor, then left Maceróla to call the police. Maceróla followed him into the living quarters, picked up Hauffe and threw him into the corner. When the fracas moved into the public area Letko, Macerola’s codefendant and coconspirator, began punching Hauffe and knocked him to the floor. Letko then broke Hauffe’s nose and began the process of gouging out Hauffe’s eyes. When Mrs. Hauffe came to the aid of her husband, Letko, who is six feet four inches tall and weighs 525 pounds, struck at her, causing her to hit her head on an air conditioner and to fall against a table. Both victims sustained serious injuries, resulting from the obviously unprovoked actions of both Maceróla and Letko. The jury was properly instructed by the court that the defendants were accused and charged as having acted in concert.
It is upon this factual background that defendants claim they were deprived of effective assistance of counsel because of the now perceived possible conflict of interest between the defense which each defendant might have offered. In the context of the factual background revealed by the record in this case, it is inconceivable that there could be any conflict of interest between these defendants or, indeed, any inconsistencies in their respective defenses to the charges. In such circumstances, a claim of deprivation of effective assistance of counsel just cannot be sustained, even under the factual claims made by defendants themselves regarding these brutal assaults.
When defendants Maceróla and Letko were arrested and accused of burglary and assault they retained Armand Riccio *267 to represent them both and conduct their defense. An experienced trial lawyer, as conceded by all, Attorney Riccio furnished both defendants with forceful, competent and effective representation throughout the trial. Now the defendants, appealing their criminal convictions, seek to renege on their choice, complaining that they were somehow denied their right to effective assistance of counsel.
This right actually encompasses two conflicting interests of the defendants, making it necessary to carefully balance them. One interest is, of course, the right to be free of any potential conflict of interest that may arise when one lawyer represents two or more defendants; and, secondly, and of equal importance, is the right of every defendant to select counsel of his choice, and this right may well be interfered with if the trial court injects himself too actively into the advisability of joint representation. As we said in People v Gomberg (38 NY2d 307, 312-313): "[a]n important concomitant of the right to counsel is the obligation of the courts to respect a selection of counsel made by the defendant and such choice should not be lightly interfered with. (See United States v Sheiner, 410 F2d 337, 342, cert den 396 US 825.) Once counsel is selected, the evolving relationship of attorney and client becomes increasingly close and intimate. In order to give proper professional guidance to his client, the attorney should be made fully cognizant of the relevant facts. (ABA Standards Relating to the Defense Function, §§ 3.1, 3.2; see Whiting v Barney, 30 NY 330, 332-333.) Trial strategy and tactics must be carefully planned and discussed. In order to insure that the attorney and client have the privacy necessary for effective representation, we have in our State, as a matter of public policy, given confidential attorney-client communications a privileged status. (CPLR 4503; Richardson, Evidence [10th ed], § 411, pp 404-405.) It has even been suggested that the freedom of confidential communication between lawyer and client is as valuable as the privilege against self incrimination. (See People v Lynch, 23 NY2d 262, 271.)”
Recognizing the fine balance that must be struck if these two important but conflicting rights are to be respected, we have evolved the necessary rules for joint representation. First, we note that joint representation is not per se violative of constitutional guarantees of effective assistance of counsel. "This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; in *268 deed, in some cases, certain advantages might accrue from joint representation. * * * 'Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack’ Glasser v United States [315 US 60, 92] (dissenting opinion)” (Holloway v Arkansas, 435 US 475, 482-483; accord People v Gomberg, 38 NY2d 307, supra; People v Gonzalez, 30 NY2d 28).
Any inquiry by the court as to whether counsel has perceived a possible conflict of interest and informed his clients of it should necessarily be limited in scope to avoid interference with the attorney-client relationship (People v Gomberg, supra, at pp 313-314). Given the limited nature of the inquiry, I agree with the majority that it is sophomoric to say that the Constitution mandates a reversal without any showing of prejudice whenever the court fails to inquire.
The record in this case does not indicate that either defendant was in any way prejudiced by the joint representation. They merely intimate how their interests might have conflicted if a different theory of defense was used. This was not a case where a defendant testified and made statements shifting the blame to his codefendant as in Gomberg. Nor is it a case where evidence was admissible against only one codefendant but was nevertheless not objected to on behalf of the other, as in Glasser. Counsel was not precluded from cross-examining any defense witnesses because he was privy to their secrets as in Holloway. It is, pure and simple, a case where the defendants agreed totally on their story, so access to another attorney would not have changed matters.
As in Gonzalez, "both defendants had the same interest in discrediting the testimony of the People’s witnesses” (People v Gonzalez, 30 NY2d 28, 33, supra). Their defense was essentially that Maceróla was legitimately at the Governor’s Motor Inn when he was attacked by Donald Hauffe, and that Letko came to his aid, injuring both Mr. and Mrs. Hauffe. Both defendants directed their trial strategy to convincing the jury that this story, and not the People’s, was the true version of what happened. Certainly there was no conflict between their interests where the common goal was so closely shared. Even the District Attorney, who candidly noted on oral argument that his policy is to inform the court when he perceives any indication of conflict, saw none. Mere speculation of what might have been is not enough. Actual, not imagined, conflict of interest must be shown before a defendant may successfully *269 claim that he was denied the right to effective assistance of counsel (People v Gonzalez, 30 NY2d 28, 32, supra).
The only conflict pointed to in the majority opinion is that defense counsel might have reduced Macerola’s responsibility for the assaults in the eyes of the jury if he had emphasized that Letko caused the injuries. Since the defendants were charged with accessorial liability (Penal Law, art 20) the jury could have convicted Maceróla for Letko’s acts, and since Maceróla was portrayed as the instigator of the crimes it is inconceivable that emphasizing his alleged inactive role in the actual assault would have benefited him. Likewise, any claim of prejudice, as advanced by the majority, because defense counsel should have emphasized that Letko was not involved in the burglary evaporated when his conviction for that crime was set aside by the Appellate Division; and also because the jury properly received the case on the theory of accessorial conduct.
It is of no small moment that it be noted that the Appellate Division attached no significance whatsoever to the claims of the defendants and, indeed, both opinions in that court treated the issue with obvious disdainful insignificance, presumably for the reasons expressed in this dissent.
In sum, absolutely no conflict of interest, or even a possibility thereof, has been demonstrated. Neither has there been any showing of any prejudice whatsoever, in any manner or form and no legal or logical reason to reverse the convictions has been shown. I, therefore, vote to affirm the orders of the Appellate Division.
Judges Jones, Wachtler and Fuchsberg concur with Judge Jasen; Judge Gabrielli dissents and votes to affirm in a separate opinion in which Chief Judge Cooke concurs.
In each case: Order reversed, etc.