THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILIP CARUSO and AGOSTINO FIORETTI, Also Known as AUGIE, Appellants.

Second Department, July 2, 1979

## APPEARANCES OF COUNSEL

*John R. Lewis* for appellants.

*Patrick Henry, District Attorney (Vincent A. Malito* of counsel), for respondent.

## OPINION OF THE COURT

O'CONNOR, J.

The defendants were convicted, after a jury trial, of crimi-

nal usury. The verdicts are supported by the evidence and the judgments should be affirmed.

■ The guilt of the defendants was established beyond a reasonable doubt. The admission into evidence of certain taped conversations between the complainant and defendant Caruso did not constitute reversible error as to defendant Fioretti. Although these taped statements were inadmissible against Fioretti (see *People v Rastelli,* 37 NY2d 240), no objection was taken by defense counsel. In addition, Fioretti was mentioned only tangentially in the conversations and the complainant, who testified at trial, was available for cross-examination as to the same basic evidence reflected in both his testimony and the tapes.

■ Although the court failed to make an inquiry pursuant to the dictates of *People v Gomberg* (38 NY2d 307) as to whether the defendants were aware of potential conflicts that might arise from their joint representation by one attorney and whether they still chose to be so represented, such a failure does not warrant reversal where no prejudice exists *(People v Sullivan,* 64 AD2d 533; *People v Ragonesi,* 63 AD2d 741; *People v Ostin,* 62 AD2d 1004). Defendant Caruso does not demonstrate any prejudice and defendant Fioretti's claims are without merit. Both defendants relied essentially on a defense that the transaction involved was not usurious. Both had the same basic interest in discrediting the complainant and there is nothing to indicate that their other interests or strategies were at all conflicting. It is noted on behalf of Fioretti that the defense attorney failed to seek limiting instructions regarding the use of the taped conversations between Caruso and the complainant, but no hint is given as to how Caruso would have been hurt had such a limiting request been made. Furthermore, as already noted, the complainant was available to Fioretti for cross-examination and the taped conversations added little to his trial testimony as far as Fioretti's role in the usurious loan was concerned. Fioretti complains about a weak summation on his behalf, but no hint is given as to how this arose out of the joint representation. Caruso certainly did not benefit. Both defendants had the same interest in discrediting the complainant and showing that no usurious scheme was involved. Finally, the bald assertion is offered on behalf of Fioretti that prejudice resulted from the fact that he did not testify, despite having a clean record, because the jury would have been prejudiced

thereby against Caruso, who did not testify because of his criminal record. Unless the courts are willing to establish a per se rule that joint representation is improper where one of several defendants has a criminal record and the others do not, this claim is also without merit. No indication is given that had Fioretti taken the stand, his testimony would have been damaging to Caruso. Furthermore, counsel could certainly have sought an instruction to the jury that Caruso's failure to testify could not be held against him. Finally, it is pure speculation on the record as to why Fioretti, a strong-arm man in a loan shark operation and certainly subject to a scathing cross-examination, did not testify. Under these circumstances, the judgments should be affirmed.

SHAPIRO, J. (concurring in part and dissenting in part). I vote to affirm as to the defendant Caruso and to reverse and order a new trial as to the defendant Fioretti.

### THE ISSUES

1. Was the verdict against the weight of the evidence?

2. Were the tape recordings admitted at trial inadmissible hearsay as to defendant Fioretti, and if so, was their admission reversible error?

3. Did the joint representation at trial of defendants Caruso and Fioretti deprive them of their right to effective assistance of counsel?

### THE FACTS

Only two witnesses testified at trial: Gus Vavoukakis, the alleged victim of the usurious transaction, and John Askew, a detective who investigated this case.

Gus Vavoukakis, 48-year-old manager of the Golden Eagle Diner in Huntington Station, Suffolk County, had accumulated heavy gambling debts when, in November, 1974, he discussed his financial situation with Johnny Morgano, a customer at his diner. Morgano introduced Vavoukakis to Phil Caruso, in the presence also of "Augie" Fioretti, that same month in the diner. Caruso agreed to lend Vavoukakis $500, on condition that Vavoukakis repay $800, $100 per week for eight weeks. If Vavoukakis missed a weekly payment, he was to pay $35 interest, which would not reduce the principal for that week. It is clear that the terms of this loan exceeded the rate of 25% per annum and, therefore, it was criminally

usurious (see Penal Law, § 190.40). Two or three weeks later, Vavoukakis made his first $100 payment to Fioretti. The second $100 payment, also to Fioretti, was made in early 1975. Vavoukakis' testimony as to subsequent payments was confused and frequently self-contradictòry. Basically, other than a $100 interest payment he made to Fioretti through an intermediary, and which he failed to mention on direct examination, he made no further payments until late 1975, when Fioretti informed him that because of his delinquency in repaying the debt, he now owed $1,600, to be paid $50 per week, $25 against principal and $25 for interest. Caruso was also pressuring Vavoukakis to pay, so Vavoukakis went to the police. The police fitted Vavoukakis with a tape recorder and gave him $25. When Vavoukakis made the $25 payment to John Morgano in December, 1975, their conversation was recorded. The tape proved inaudible because of background noise. However, three audible tapes were made of Vavoukakis' conversations with Caruso over the telephone on March 10 and March 19, 1976, and at a luncheonette on March 12, 1976. At the luncheonette, Vavoukakis paid Caruso $40.

The other details as to times and amounts of payments are very unclear from Vavoukakis' testimony; however, there were payments made besides those mentioned above. Caruso, Fioretti and Morgano were arrested and charged with conspiracy and criminal usury. The court dismissed the conspiracy count as to Fioretti and the jury acquitted Caruso and Morgano of that charge. However, the jury found all three men guilty on the usury count. Caruso and Fioretti, but not Morgano, now appeal their convictions to this court.

## A

### SUFFICIENCY OF THE EVIDENCE

Both Caruso and Fioretti challenge the sufficiency of the evidence upon which their convictions were based.

Caruso maintains that it is contrary to human experience that a loan shark would wait almost a year and a half for his money and make as few efforts to collect it as were made here. This may be true, but the evidence, if believed by the jury, was sufficient to establish a violation of section 190.40 of the Penal Law. Being an unusually lax loan shark is not a defense to a charge of criminal usury.

The complainant, Vavoukakis, was the only witness to

testify to the elements of the offense, and his testimony was seriously confused and self-contradictory. At various points in the trial, he testified that the sum of the payments he had made on the loan was $370, $470, or $425. He admitted that his trial testimony conflicted with his Grand Jury testimony. He testified on direct to violent threats against him by Caruso, but upon being confronted on cross with his own taped conversations, he admitted that no such threats were made (see *People v Yanik,* 63 AD2d 574). Caruso thus urges that his conviction was against the weight of the evidence. The People respond that the evidence of guilt against Caruso was so overwhelming that his argument on this ground requires no further comment. The People are correct. Vavoukakis testified that Caruso laid down the terms of the loan, pressured him to pay it and discussed the loan with him on several occasions. The transcripts of Vavoukakis' taped conversations with Caruso provide further evidence. The jury had the prerogative to believe Vavoukakis' testimony, despite the inconsistencies. Thus, the testimony as to Caruso's guilt is sufficient to sustain his conviction.

The evidence was likewise sufficient to sustain Fioretti's conviction. According to the complainant's testimony, Fioretti was present when the terms of the loan were initially discussed. The first two $100 payments were made to him. An interest payment was also made to him. It was Fioretti who explained to Vavoukakis the new repayment rates a year later. Tested by the rule that in reviewing a conviction in a criminal case, we must view the evidence in the light most favorable to the prosecution *(People v Montanez,* 41 NY2d 53; *People v Leach,* 57 AD2d 332), that evidence was sufficient to warrant the jury in determining that Fioretti was actively involved in the usurious activity and were it not for the errors hereafter stated, I would join the majority in affirming the judgment as to him.

B

### THE HEARSAY ISSUE AND THE GOMBERG RULE

Fioretti asserts that his conviction should be reversed because the tapes of the three conversations in March, 1976 between Vavoukakis and Caruso that were played to the jury contained hearsay implicating him. It seems clear that since the court held, as a matter of law, that he was not implicated

in the conspiracy the statements made by Caruso were not admissible against him (see *People v Rastelli,* 37 NY2d 240; *People v Payne,* 35 NY2d 22; *People v Salko,* 47 NY2d 230; *Bruton v United States,* 391 US 123).

The tapes which were received in evidence implicated Fioretti to a substantial degree. The District Attorney argues, however, that no objection was taken to their admission and that in any event they merely repeated what the complainant testified to at the trial. His argument falls for three reasons: (1) if there were inconsistent representation there would, of course, be no objection by counsel who also represented Caruso; (2) the jury might not have believed Vavoukakis' confusing testimony as to his dealings with Fioretti if it were not supported by the tapes; and (3) in view of counsel's representation of Caruso, he was not in a position to request a jury instruction that the taped conversations were only to be considered against Caruso.

In *People v Gomberg* (38 NY2d 307) the court dealt with a situation where all the defendants were represented by the same counsel. In determining the issue of effective assistance of counsel, the court said (pp 312-314):

"The right of an accused in a criminal proceeding to the assistance of counsel is guaranteed by the Federal and State Constitutions, as well as by State statute. (US Const, 6th. Amdt; NY Const, art I, § 6; CPL 210.15, subd 2.) This constitutional right may be substantially impaired if one lawyer simultaneously represents the conflicting interests of a number of defendants. *(Glasser v United States,* 315 US 60, 70.) However, the joint representation of defendants is not per se a denial of the effective assistance of counsel. *(People v Gonzalez,* 30 NY2d 28, 34, cert den 409 US 859.) A conflict exists only when the individual defenses 'run afoul of each other'. *(People v Gonzalez, supra,* at p 34.) Yet, once a conflict is clearly established, the courts will not enter into 'nice calculations' as to the amount of prejudice resulting from the conflict. *(Glasser v United States, supra,* at p 76.)

\* \* \*

"Since the right to effective assistance of counsel and the right to retain counsel of one's choice may clash when a retained attorney is involved in an apprent conflict of interest, a Trial Judge has a duty to protect the right of an accused to effective assistance of counsel. At the same time, a court

should not arbitrarily interfere with the attorney-client relationship.

"The court should also recognize that a defendant may not always perceive the existence of a conflict of interest in the joint representation by an attorney. Consequently, the court should be satisfied, where there is joint representation, that the defendant's decision to proceed with his attorney is an informed decision. *(United States v Truglio,* 493 F2d 574, 579; *United States v Williams,* 429 F2d 158, 161, cert den 400 US 947; *United States v Lovano,* 420 F2d 769, 772-773, cert den 397 US 1071; *Campbell v United States,* 352 F2d 359, 360; ABA Standards Relating to the Function of the Trial Judge, § 3.4; see *People v Chacon,* 69 Cal 2d 765.) The court may even inquire as to whether counsel himself has perceived the conflict and apprised his client of the risks involved. (See *Lord v District of Columbia,* 235 A2d 322, 323 [DC].) * * * What is required is that when two or more defendants are represented by the same attorney, the trial court ascertain, on the record, whether each defendant has an awareness of the potential risks involved in that course and has knowingly chosen it. (See *United States v Wisniewski,* 478 F2d 274, 285, *supra; Glasser v United States,* 315 US 60, 71, *supra.)*

"It is important to note that the preliminary inquiry takes place before the formal commencement of the trial. As a result, the court may not be fully cognizant of the evidence to be adduced, the strategies to be followed and all defenses that may be plausibly asserted. Consequently, the court, at the outset, may not be aware of the details or ramifications of any conflict that it might later perceive. Nevertheless, this does not relieve the court from its responsibility to assure that codefendants' decision to proceed with one attorney is an informed decision."

Here, the court made no inquiry whatever of counsel or the defendants with regard to any possible inconsistency or impropriety in their joint representation by one attorney. That Fioretti was prejudiced by the joint representation is, to me, clear beyond doubt. Unlike Caruso, he had never been convicted of a crime and he could have taken the stand and refuted the complainant's testimony, but if he did so, the jury might well ask itself why Caruso did not take the stand. It is of course also clear that Fioretti's testimony might well have been to the disadvantage of Caruso. It is clear therefore that counsel placed both himself and Fioretti in a dilemma which

deprived Fioretti of his constitutional right to proper assistance of counsel. Independent counsel interested only in Fioretti might well have placed him on the stand and, considering the confusing nature of Vavoukakis' testimony, might have obtained his acquittal.*

It should also be noted that in summation defense counsel summed up almost entirely as to Caruso and barely mentioned Fioretti. Under such circumstances, I am convinced that there must be a retrial as to Fioretti.

In *People v Gomberg* (38 NY2d 307, *supra),* one of the reasons given by the court for affirming the conviction was that the defendant had retained the same counsel for appellate purposes with knowledge that his conflict of interest at the trial would be an issue on appeal and the court thus concluded (p 316) that that established that defendant could not "be seriously troubled by the effectiveness of that earlier representation". Here, appellate counsel was not trial counsel; however, both appellants are represented by the same appellate counsel. In view of the contention that the joint representation of defendants on the trial represented a conflict of interest it is clear that appellate counsel should not have appeared here for both defendants. However that may be, Fioretti's constitutional rights should not be withdrawn from him by what the Court of Appeals in *Gomberg* (p 316) referred to as an anticipated "less than forceful presentation of the conflict of interest issue in his brief and argument to our court." Finally, in *Gomberg* the Court of Appeals held (p 316) that the trial court, "by its careful and measured response to the conflict of interest issue, more than fulfilled its obligation to make a reasonable inquiry of possible conflict" and that "[t]he defendants, after being alerted to the existence of a possible conflict of interest and given the opportunity to retain separate counsel, consented to continued representation by Kassner & Detsky." Under those circumstances the court held (p 316) that defendant, by his consent which was "knowingly and intelligently made * * * waived any claim of possible prejudice resulting from the joint representation." Contrary to

---

* In *People v Ostin* (62 AD2d 1004) this court said that "since a careful study of the evidence and the role of each defendant establishes that there was no conflict in their interests, a new trial is not required". Here, however, it is clear that defendant Fioretti was greatly prejudiced by the joint representation and therefore the *Gomberg* violations may not be excused (cf. *People v Gonzalez,* 30 NY2d 28; *People v Ragonesi,* 63 AD2d 741; *People v Sullivan,* 64 AD2d 533).

the situation there, the court here made no inquiry whatever of defense counsel or the defendants as to the likelihood or possibility of a conflict of interest and since that conflict appears to me to be more than clear, I am compelled to vote for reversal in the case of Fioretti since we should not "enter into 'nice calculations' as to the amount of prejudice resulting from the conflict" *(People v Gomberg, supra,* p 312, citing *Glasser v United States,* 315 US 60, 76) and because there was here, as in the recent case of *People v Macerola* (47 NY2d 257, 262), a "failure of the Trial Judge to ascertain on the record whether each defendant was cognizant of the potentional risks inherent in the simultaneous representation of codefendants at trial and due to the conflict which existed between the defenses sought to be established by each defendant".

SUOZZI, J. P., and RABIN, J., concur with O'CONNOR, J.; SHAPIRO, J., concurs insofar as the majority has affirmed the conviction of defendant Caruso, but otherwise dissents and votes to reverse the conviction of defendant Fioretti and order a new trial as to him, with an opinion.

Two judgments (one as to each defendant) of the Supreme Court, Suffolk County, both rendered June 29, 1977, affirmed, and case remitted to the Supreme Court, Suffolk County, for further proceedings pursuant to CPL 460.50 (subd 5).