THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD MM.,* Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERT MM.,* Appellant.

Third Department, July 10, 1980

* Names used herein are fictitious for purposes of publication.

APPEARANCES OF COUNSEL

*Donald J. Shanley* for Richard MM., appellant.

*E. Stewart Jones, Jr.,* and *Robert M. Cohen* for Albert MM., appellant.

*Seymour Meadow, District Attorney,* for respondent.

## OPINION OF THE COURT

GREENBLOTT, J. P.

Defendants Richard MM. and Albert MM. were charged in a one-count indictment with the crime of manslaughter in the first degree (Penal Law, § 125.20, subd 2). The indictment alleged that on or about December 14, 1977, Richard MM., acting at the direction of and with the assistance of Albert MM., shot and killed John Marmo. Defendants, represented

by an attorney retained by both, were jointly tried and found guilty as charged.

■ Defendants first contend that they were deprived of their constitutional right to the effective assistance of counsel by reason of their representation by the same attorney at trial. We agree. The trial court made no inquiry at all to ascertain whether defendants perceived the potential risks inherent in joint representation. This omission was error *(People v Macerola,* 47 NY2d 257, 264) and requires a reversal and a new trial if defendants can "demonstrate that a conflict of interest, or at least the significant possibility thereof, did exist" *(People v Macerola, supra,* p 264). Defendants have demonstrated that such a conflict existed (see *People v Fioretti,* 49 NY2d 976; *People v Baffi,* 49 NY2d 820).

With respect to codefendant Albert, the only evidence which established that he aided and abetted codefendant Richard in Marmo's killing was Richard's confession in the form of his Grand Jury testimony. This was hearsay as to Albert and was highly prejudicial to him. Albert's interests were not identical to Richard's, but because of the joint representation, Albert did not take the stand, for to do so where the codefendant remained silent would likely have been prejudicial to the silent codefendant. Moreover, no objection was made to the introduction of the hearsay statements by Richard in his Grand Jury testimony, which the prosecution used against Albert.

Likewise, the joint representation deprived codefendant Richard of the effective assistance of counsel. We agree with Richard's contention that it was critical for him to take the stand and testify in his own behalf in order that he might successfully assert his defense of justification. Despite Richard's lack of a criminal record and no other apparent reason for his failure to testify, however, counsel was concerned with codefendant Albert's pending indictment for burglary and larceny and feared cross-examination concerning these crimes. As a result, Richard did not testify in his own behalf, thereby losing any chance he may have had for an acquittal.

Both defendants have also pointed to other meritorious conflicts between their defenses. However, further discussion is not required, for it is sufficient that they have demonstrated that an "apparent conflict" existed *(People v Macerola, supra,* p 265).

■ Next, defendants' motion for a *Huntley* hearing should

have been granted. In support of their motion, defendants contended that they were subpoenaed to testify before a Grand Jury, and that when they appeared, the District Attorney threatened to indict them for murder unless they signed waivers of immunity, which they allegedly did under duress. Both defendants were targets of the Grand Jury investigation and both were entitled, prior to executing a waiver of immunity, to be advised by the District Attorney of their right to consult with counsel and to have a reasonable adjournment for that purpose (CPL 190.45, subd 3). The testimony of both defendants before the Grand Jury was subsequently utilized by the prosecution as part of his direct case upon the trial. The trial court, however, erroneously denied the motion upon the ground that the moving papers did not contain any sworn allegations of fact to form the basis of a suppression hearing.

■ ■ "Where, as here, a suppression motion is made on the basis of involuntariness, a factual showing is not required to obtain a hearing" *(People v Rieck,* 70 AD2d 724, 725; CPL 710.60, subd 3, par [b]). Although our decision in *Rieck* is squarely on point, we additionally note that CPL 710.60 (subd 3, par [b]) authorizes a summary denial of a suppression motion except where, as here, the motion is based upon an involuntary statement. In that event, CPL 710.60 (subd 4) provides that a suppression hearing "must" be held. The People's reliance upon *People v Roberto H.* (67 AD2d 549), where the Second Department upheld the summary denial of a motion for a suppression hearing, is misplaced; the defendant there had made "no statements" whatsoever to law enforcement authorities concerning the indictment. Finally, we reject the People's contention that testimony given before a Grand Jury pursuant to a waiver of immunity may never be suppressed. CPL 60.45 (subd 2, par [a]) provides in part that a statement is "involuntarily made" by a defendant when it is obtained from him by "any person" (here, allegedly the District Attorney) by the use of or threatened use of "undue pressure which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement".

Since there must be a new trial, we do not pass upon any of the other contentions raised by defendants.

The judgments should be reversed, on the law, and a new trial ordered.

HERLIHY, J. (dissenting). As in the case of *People v Mendoza*

(72 AD2d 608, 609), there has been no showing of prejudice to the defendants. There is no dispute between them as to the fact of their participation in the events leading to the death of John Marmo. Indeed, they both testified before the Grand Jury, and their view of events was that Albert had provided Richard with guns solely out of paternalism and that Richard fired solely because of fear and because Albert had said not to let anyone enter.

These defendants, father and son, had but one defense—*justification.* If Richard had pulled the trigger, his father admitted putting the finger on it. The aiding and abetting on Albert's part flows not just from Richard's statement, but also from his description of his own acts in providing the weapons and ordering Richard to let no one enter. In this particular case, the defendants are not really in separate legal positions, and they jointly sought the protection of justification.

Further, I reject the contention that separate counsel would have made any difference in the decision of Richard or Albert to not testify in their own defense.

These defendants were being tried as accomplices, and all of their actions related to their concern and conduct in regard to the decedent were admissible against each other. Any fear counsel expressed as to Albert's pending indictment had to do with the cross-examination of Albert and had nothing to do with Richard. The record establishes that Richard was in custody of the police when the alleged burglary and larceny (theft of guns from the decedent's residence) was committed by Albert. The record presents no basis for being concerned that Richard could be cross-examined as to the pending indictment or that it had anything to do with the decision not to have Richard testify.

The present situation is not unlike that described in the case of *People v Gonzalez* (30 NY2d 28, 34): "In sum, a careful review of the record discloses no conflict of interests. To the contrary, the record establishes that counsel was thorough and diligent in preparing this case and protecting the interests of his clients." In any event, the conduct of Albert in going to the decedent's residence and burglarizing it or taking the rifles was relevant to the crime charged, manslaughter, and was admitted against both defendants. Cross-examination of Albert could have been damaging to Richard and it is entirely consistent to view the failure of Albert to testify as being in Richard's favor.

This is not such a case as to present conflicting defenses or subtle inconsistencies. Unlike the case of *People v Fioretti* (49 NY2d 976), there was no complaining witness to be refuted and such testimony as was damaging to either defendant was damaging to both and not subject to refutation. As indicated in the case of *People v Macerola* (47 NY2d 257, 264), the mere failure of the Trial Judge to inquire on the record as to the use of a single attorney does not require a reversal of a judgment of conviction.

Finally, the District Attorney, in his response to the request for a suppression hearing as to the Grand Jury minutes, expressly affirmed that the defendants waived immunity "upon the advice of counsel". The defendants' motion was made upon information and belief of their counsel, who asserted that they involuntarily testified. Upon this record, there was no showing of facts sufficient to require a *Huntley* hearing.

The remaining errors urged by defendants would not warrant reversal because of the overwhelming proof of guilt. I find that the sentences imposed were not excessive.

The judgments should be affirmed.

SWEENEY, MAIN and MIKOLL, JJ., concur with GREENBLOTT, J. P., HERLIHY, J., dissents and votes to affirm in a separate opinion.

Judgments reversed, on the law, and a new trial ordered.