Jasen, J.
Jerry Gomberg, George Kaplan and Martin Hodas allegedly owned the Geisha House massage parlor located on West Forty-Second Street in the Times Square area of New York City. The three alleged partners were charged with setting fire to two competing massage parlors in an apparent attempt to burn certain competitors out of business.
According to the evidence adduced by the People at the trial, the three men had become extremely disturbed over the fact that two competing parlors were undercutting the Geisha House’s prices and decided to take affirmative action. The key witnesses against the defendants were three Geisha House employees (Dexter Morton, Christopher Hatton and Earl Jones) and the owner of one of the competing parlors, Nicholas Valentine. The three employees were paid accomplices who actually set the two fires. Valentine testified that, on two occasions, the defendants threatened him. After the first massage parlor was set on fire, Valentine was warned that if he did not raise his prices, his massage parlor would be next. As it turned out, it was. The Valentine testimony was offered to corroborate the testimony of the three accomplices. (See CPL 60.22, subd 1; People v Daniels, 37 NY2d 624.)
The defendants, in cross-examination of the People’s witnesses and in their own direct case, attempted to discredit the veracity of the prosecution witnesses. In addition to attempting to discredit the prosecution’s witnesses, Hodas presented evidence, which was contradicted, that he was merely a landlord of the Geisha House and thus had no motive to set fire to *311 competitor massage parlors. This defense proved to be successful, as Hodas was acquitted, while the other two defendants, appellants herein, were found guilty of two counts of arson in the second degree.
The principal issue on this appedl arises out of the joint representation of all three defendants by the same attorney, Herbert Kassner. The firm of Kassner & Detsky had performed legal services for Gomberg, Kaplan and Hodas on a continuing basis for approximately two years prior to their indictment. The defendants retained the firm to represent them in the criminal proceedings. Kassner participated in the jury selection process and tried the case. His partner, Seymour Detsky, represented the defendants in a preliminary motion for disclosure and at a proceeding conducted immediately prior to the commencement of the trial. Moreover, Kassner & Detsky also represented, at the request of the defendants, two of the accomplices (Dexter Morton and Earl Jones), who later gave incriminating testimony against the defendants. Detsky was designated to represent the two accomplices, while Kassner handled the defense of Gomberg, Kaplan and Hodas. Between six and nine months after Detsky assumed the representation of the accomplices, the attorneys discovered that the two accomplices had made statements to the authorities which implicated their principal clients. Sometime thereafter, the representation of Morton and Jones was dropped. After conviction of Gomberg and Kaplan, different counsel represented the appellants on their appeals to the Appellate Division. Although Kassner did not participate in the intermediate appeal, Kassner argued Gomberg’s appeal in our court. Kaplan remains represented by other counsel.
Appellant Kaplan argues that the joint representation by Kassner & Detsky deprived him of the effective assistance of counsel. He contends that Hodas’ defense of lack of economic incentive to commit the crimes charged worked to shift all of the blame upon the two remaining defendants and reinforced the prosecution’s argument that the owners of the Geisha House would have the motive and opportunity to perpetrate an arson. The only defense witnesses were attorney Kassner, Hodas and Herbert Levin, the accountant for Hodas. Prejudice is asserted to lie in the failure to call witnesses in Kaplan’s behalf and in the natural reluctance of Kassner to subject Hodas and Levin to a full and searching cross-examination.
In the brief for appellant Gomberg, which was prepared by *312 Kassner, the conflict of interest point is not specifically raised. Instead, we find this rather cryptic statement: "Various arguments, including insufficiency of evidence have been briefed by the co-defendant Kaplan on this appeal, which if found valid, would necessitate reversal of the convictions of both defendants. This brief will not go over the same ground”. This statement reflects Kassner’s clear reluctance to argue that his own actions below deprived his client Gomberg of the effective assistance of counsel. As an alternative, he asserts a kind of domino theory—that if we find Kaplan to have been deprived of his constitutional right to effective assistance of counsel and reverse the conviction, we must also reverse as to Gomberg. We cannot agree with the contentions of either appellant and would affirm the orders of the Appellate Division.
In reaching a resolution of the issue of effective assistance of counsel, it is necessary to carefully balance two conflicting considerations flowing from the same constitutional protection. The right of an accused in a criminal proceeding to the assistance of counsel is guaranteed by the Federal and State Constitutions, as well as by State statute. (US Const, 6th Arndt; NY Const, art I, § 6; CPL 210.15, subd 2.) This constitutional right may be substantially impaired if one lawyer simultaneously represents the conflicting interests of a number of defendants. (Glasser v United States, 315 US 60, 70.) However, the joint representation of defendants is not per se a denial of the effective assistance of counsel. (People v Gonzalez, 30 NY2d 28, 34, cert den 409 US 859.) A conflict exists only when the individual defenses "run afoul of each other”. (People v Gonzalez, supra, at p 34.) Yet, once a conflict is clearly established, the courts will not enter into "nice calculations” as to the amount of prejudice resulting from the conflict. (Glasser v United States, supra, at p 76.)
On the other hand, an important concomitant of the right to counsel is the obligation of the courts to respect a selection of counsel made by the defendant and such choice should not be lightly interfered with. (See United States v Sheiner, 410 F2d 337, 342, cert den 396 US 825.) Once counsel is selected, the evolving relationship of attorney and client becomes increasingly close and intimate. In order to give proper professional guidance to his. client, the attorney should be made fully cognizant of the relevant facts. (ABA Standards Relating to the Defense Function, §§ 3.1, 3.2; see Whiting v Barney, 30 NY 330, 332-333.) Trial strategy and tactics must be carefully *313 planned and discussed. In order to insure that the attorney and client have the privacy necessary for effective representation, we have in our State, as a matter of public policy, given confidential attorney-client communications a privileged status. (CPLR 4503; Richardson Evidence [10th ed], § 411, pp 404-405.) It has even been suggested that the freedom of confidential communication between lawyer and client is as valuable as the privilege against self incrimination. (See People v Lynch, 23 NY2d 262, 271.)
Since the right to effective assistance of counsel and the right to retain counsel of one’s choice may clash when a retained attorney is involved in an apparent conflict of interest, a Trial Judge has a duty to protect the right of an accused to effective assistance of counsel. At the same time, a court should not arbitrarily interfere with the attorney-client relationship.
The court should also recognize that a defendant may not always perceive the existence of a conflict of interest in the joint representation by an attorney. Consequently, the court should be satisfied, where there is joint representation, that the defendant’s decision to proceed with his attorney is an informed decision. (United States v Truglio, 493 F2d 574, 579; United States v Williams, 429 F2d 158, 161, cert den 400 US 947; United States v Lovano, 420 F2d 769, 772-773, cert den 397 US 1071; Campbell v United States, 352 F2d 359, 360; ABA Standards Relating to the Function of the Trial Judge, § 3.4; see People v Chacon, 69 Cal 2d 765.) The court may even inquire as to whether counsel himself has perceived the conflict and apprised his client of the risks involved. (See Lord v District of Columbia, 235 A2d 322, 323 [DC].) However, a court must be careful not to pursue its inquiry too far as it may infringe upon the defendant’s right to retain and confer with counsel of his own choice. (See People v Gonzalez, 30 NY2d 28, 34, supra.) Of course, the court ordinarily should not probe, as part of its inquiry, into confidential attorney-client communications, including discussions of possible defenses of both the accused and his codefendants. Moreover, to permit an extensive judicial inquiry into privileged matter would "virtually * * * outlaw joint representation”. (United States v Wisniewski, 478 F2d 274, 285.) What is required is that when two or more defendants are represented by the same attorney, the trial court ascertain, on the record, whether each defendant has an awareness of the potential risks involved in that course *314 and has knowingly chosen it. (See United States v Wisniewski, 478 F2d 274, 285, supra; Glasser v United States, 315 US 60, 71, supra.)
It is important to note that the preliminary inquiry takes place before the formal commencement of the trial. As a result, the court may not be fully cognizant of the evidence to be adduced, the strategies to be followed and all defenses that may be plausibly asserted. Consequently, the court, at the outset, may not be aware of the details or ramifications of any conflict that it might later perceive. Nevertheless, this does not relieve the court from its responsibility to assure that codefendants’ decision to proceed with one attorney is an informed decision. In carrying out this responsibility, the court places reliance upon the willingness and ability of defense counsel to perform their duties in a forthright and professional manner. Attorneys are under an ethical obligation to disclose to their clients, at the earliest possible time, any conflicting interests that might cloud their representation. Disclosure alone is not enough. The lawyer may not act for the client unless the client has given his informed consent to further representation. (Code of Professional Responsibility, EC 5-16, DR 5-101 [A], DR 5-105 [B], [C]; ABA Standards Relating to the Defense Function, § 3.5 [a], [b].) It is appropriate, under such circumstances, for the court to place great weight upon counsel’s representation that there is no conflict in his joint representation. Similarly, the court may rely upon counsel’s assurances that he had fully discussed the potentiality of conflict with his clients and received their continued approbation. (United States v Armone, 363 F2d 385, 406, cert den sub nom. Viscardi v United States, 385 US 957; Hill v State, 316 A2d 557, 558 [Del].) It may properly be assumed that an attorney will not perjure himself, nor deliberately act in violation of the Code of Professional Responsibility. (United States v Wisniewski, 478 F2d 274, 284-285, supra.)
Applying the foregoing principles to the case before us, we believe that the trial court adequately and properly inquired of the appellants and their attorney whether joint representation of the appellants would result in a conflict of interest, and, therefore, amply protected the appellants’ right to effective assistance of counsel.
The record discloses that prior to the commencement of the trial, the court inquired whether the defendant’s joint representation would result in a conflict of interest. In the presence *315 of the defendants, Mr. Detsky and the Assistant District Attorney, the court stated its desire "to make certain at this point, that you [the defendants] don’t regard your defense as being in conflict or thát there might be a conflict of interest with respect to any attorney that represents all three of you.” Hodas gave an affirmative response when he was asked if he wanted Kassner’s continued representation. Gomberg, on the other hand, at first did not understand what the Trial Judge was getting at. Then he opined that "maybe it is better for us to get another lawyer.” At this point, the prosecutor indicated his belief that the defendants were attempting to stall the commencement of a trial that already had been delayed for several months. After some further discussion, defense counsel Detsky informed the court that he had discussed the problem with his clients only three or four days before and that all three defendants "said they had confidence in our firm to handle it.” The Judge then asked Detsky, in the presence of the defendants, if "The way the situation stands is that you advised them of this and they told you they didn’t want to hire other counsel?” Detsky’s reply indicated that the Judge’s understanding was correct. After further extended colloquy, the court stated: "I think I am going to cut this discussion short. We will proceed with the trial. If any of the defendants wish, either today or any other day, to bring in other counsel in the case, they are at liberty to do so. If any defendant feels at some point that there is a conflict of that nature, he may have other counsel.” Throughout this entire proceeding, Kaplan remained silent.
We hold that the Trial Judge’s inquiry of appellants and their counsel as to possible conflict of interest in this case was more than sufficient to protect the appellants’ right to effective assistance of counsel. Although Gomberg initially expressed some misgivings, at the end of the proceedings all of the defendants were made aware of the possible conflict and acquiesced in the continuation of the Kassner & Detsky representation. The court took added precaution to advise the defendants that if at some later stage of the trial a conflict arose, the court would permit other counsel to enter the case. The defendants, intelligent and perceptive businessmen, never complained thereafter. They should not be permitted to complain now. In point of fact, it cannot truly be said that appellant Gomberg is complaining now. Since Gomberg retained Kassner & Detsky to serve as counsel on this appeal, *316 Gomberg must be deemed to have waived any claims arising out of Kassner’s prior representation. A defendant who retains an attorney for appellate purposes with knowledge that the attorney’s asserted conflict of interest at the trial would be an issue on appeal cannot be seriously troubled by the effectiveness of that earlier representation. Similarly, Gomberg must be held to have anticipated Kassner’s less than forceful presentation of the conflict of interest issue in his brief and argument to our court.
The trial court, by its careful and measured response to the conflict of interest issue, more than fulfilled its obligation to make a reasonable inquiry of possible conflict. The defendants, after being alerted to the existence of a possible conflict of interest and given the opportunity to retain separate counsel, consented to continued representation by Kassner & Detsky. By his consent, which was knowingly and intelligently made, defendant Kaplan, as well as defendant Gomberg, waived any claim of possible prejudice resulting from the joint representation.
As to the other contentions raised by both appellants, we have considered same and find them to be without merit.
The orders of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
In each case: Order affirmed.