■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARL V. STEWART, Appellant.—Judgment reversed, on the law and facts, and new trial granted. Memorandum: Defendant was convicted of second degree murder. The victim, Oria Doss, was found dead in an apartment which defendant shared with his brother. A homicide detective questioned defendant and posed a hypothetical to him speculating that he committed the murder after Doss had angered him. At the time, defendant, who was known by the police to have been treated for psychiatric problems, denied any involvement in the homicide and was released.

Several days later, Attorney Wesley Taylor contacted the Buffalo Police Homicide Squad and told them that a "client" of his could shed some light on the Doss homicide investigation. Subsequently, the attorney told the homicide officers that the client was defendant's father, Samuel Stewart, Sr. The police officers, accompanied by Taylor, went to the elder Stewart's home where, in the presence of defendant and other family members, the father told the police that defendant had

admitted to him that he had killed Doss. Defendant, his father and Taylor went with the police to headquarters where the father signed a written statement relating that defendant said that he heard voices telling him to "kill her, kill her"; that he struck Doss with a cleaver; that he hid the weapon in the attic of the house where the homicide occurred; and that no one saw him.

Defendant was then arrested and Taylor, acting as defendant's counsel, immediately advised defendant not to make any statements. Based on the father's statement, a search warrant was issued and a utility knife, stained with blood of the same type as the victim's, was found in the attic.

When the case was scheduled for the Grand Jury, the prosecutor contacted Taylor and requested that defendant's father appear to testify. Although no subpoena was served on defendant's father, he appeared, accompanied by Taylor, and testified at the Grand Jury on the scheduled date.

Taylor represented defendant at trial and the father was the chief prosecution witness whose testimony was crucial to the People's case against defendant. The only evidence directly implicating defendant with the crime was the father's testimony as to defendant's admissions and the blood-stained knife discovered as a result of the father's statement. The father also testified at trial that he came forward with the information about defendant because he was afraid for other members of the family and wanted defendant to get help because he believed defendant was sick. The defense theory at trial was that defendant, because of his psychological condition, adopted the hypothetical posed by the homicide detective and admitted to his father committing a crime which he had not committed. The theory wholly accepted that the admissions were made, and Taylor made no effort on cross-examination to impeach the father's testimony.

It is well settled that when a court becomes aware of a possibility of a conflict of interest restraining defendant's counsel, defendant must be advised of the risks involved in continued representation by that attorney in order to ascertain whether defendant, aware of those risks, has knowingly chosen such representation *(People v McDonald,* 68 NY2d 1; *People v Gomberg,* 38 NY2d 307). The failure to give such advice and to make appropriate inquiry is reversible error if it is shown that " ' "a conflict of interest, or at least the significant possibility thereof, did exist" ' *(People v Lombardo,* 61 NY2d, at p 103, *supra; People v Macerola,* 47 NY2d, at p 264, *supra)." (People v McDonald, supra,* p 9.)

Here, the attorney's representation of both the chief prosecution witness and the defendant presented an actual conflict of interest from which prejudice must be presumed *(see, People v Gomberg, supra; cf. People v Lombardo,* 61 NY2d 97, *supra).* The nature of the conflict is shown by contrasting defendant's interest in his acquittal with his father's stated reasons for contacting Taylor and the police, and for testifying. The father's interest was in securing medical help and in distancing himself and the rest of his family from defendant. It cannot be said on this record that the father's interests and goals did not impact upon Taylor's representation of the defendant.

The nature and character of counsel's cross-examination of the father is also significant to our determination. An "attorney's decision whether and how best to impeach the credibility of a witness to whom he * * * owe[s] a duty of loyalty 'necessarily place[s the attorney] in a very awkward position, where prejudice to [defendant] need not be precisely delineated but must be presumed *(see, People v Gomberg,* 38 NY2d 307, 312, *supra).'* " *(People v McDonald,* 68 NY2d 1, 11, *supra.)* Here, counsel made no attempt to impeach the father; instead, the tactic was to explain away the damaging admissions as a part of defendant's psychological infirmities. It is of no consequence whether the defense was in the defendant's best interests. It is enough to note that the record fails to demonstrate that defendant accepted the risk that the defense was not in his best interests but might serve the interests of his father and other family members *(cf. People v Lombardo, supra,* p 103). Accordingly, because of the conflict of interest, defendant was deprived of the effective assistance of counsel.

We have examined defendant's other contentions and find them to be without merit.

All concur, except Lawton, J., who dissents and votes to affirm, in the following memorandum.

Lawton, J. (dissenting). I must dissent. The majority opinion is premised on a finding that a conflict of interest existed at the time of trial between defendant and his father. This finding is predicated on the father's testimony at trial that the reason he retained defendant's counsel and came forward with the information his son had given him regarding his involvement in this crime was his concern for the safety of the other members of the family and his desire to get medical help for his son. Both of these "interests" are natural and immediate concerns of a parent, and neither rises to the level of a

conflicting interest sufficient to hold that defendant was denied his 6th Amendment right to counsel. Prior to and during trial, counsel acted solely in defendant's best interests and free of any conflict. Neither did the prior representation of the father by counsel for the defendant at the time of his appearance before the Grand Jury create any conflict, absent any showing that the interests of the father and defendant were at variance *(People v McCullars,* 89 AD2d 669, 670).

This case differs substantially, therefore, from the line of conflict of interests cases, wherein one attorney representing multiple defendants is placed in a position that to present evidence to help one defendant necessarily injures another *(see, Glasser v United States,* 315 US 60). Even in cases of multiple representation, "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *(Cuyler v Sullivan,* 446 US 335, 350). To warrant reversal, there must be a showing that a true conflict existed and that said conflict affected his lawyer's performance in a significant way *(Fiumara v United States,* 727 F2d 209, 212, *cert denied* 466 US 951).

There has been no showing that counsel for defendant was under any restraint to do other than what was in the best interests of his client. Indeed, from the very beginning when counsel advised defendant not to make a statement to the police and throughout the trial, counsel very ably presented a creditable defense to the charges, but the proof of guilt was overwhelming *(People v Gonzalez,* 30 NY2d 28, *cert denied* 409 US 859). (Appeal from judgment of Erie County Court, Forma, J.—murder, second degree.) Present—Dillon, P. J., Doerr, Green, Pine and Lawton, JJ.