[927 NE2d 532, 901 NYS2d 112]

The People of the State of New York, Respondent, v James J. Carncross, Appellant.

Argued February 11, 2010; decided March 25, 2010

## POINTS OF COUNSEL

*Mitchell Goris & Stokes, LLC,* Cazenovia (*Stewart F. Hancock, Jr.,* of counsel), and *Bianco Law Offices,* Syracuse (*Randi Juda Bianco* of counsel), for appellant. I. The proof presented by the prosecution was legally insufficient to establish the required elements of aggravated criminally negligent homicide. The trial court erred, as a matter of law, in denying defendant's motions to dismiss for legal insufficiency and the Appellate Division erred in failing to reverse the trial court and dismiss that charge. (*People v Cabrera,* 10 NY3d 370; *People v Gray,* 86 NY2d 10; *People v Badke,* 21 Misc 3d 471; *People v Haney,* 30 NY2d 328; *People v Soto,* 44 NY2d 683; *People v Ricardo B.,* 73 NY2d 228; *People v Loughlin,* 76 NY2d 804; *People v Maher,* 79 NY2d 978; *People v Harris,* 81 NY2d 850; *People v Ladd,* 89 NY2d 893.) II. The Appellate Division erred in holding that defendant had failed to preserve the contention that the evidence was legally insufficient to establish that defendant had the requisite mens rea for criminally negligent homicide; in the event that this Court should hold that this issue is being presented for the first time in this Court, this Court can and should hear the issue on the merits. (*People v Fermin,* 36 AD3d 934; *People v Edwards,* 95 NY2d 486; *People v LaPetina,* 34 AD3d 836; *People v Duncan,* 177 AD2d 187; *People v Flores,* 124 Misc 2d 478; *People v Haney,* 30 NY2d 328; *People v Kibbe,* 35 NY2d 407; *People v Le Mieux,* 51 NY2d 981; *People v Gray,* 86 NY2d 10; *People v Bynum,* 70 NY2d 858.) III. The court erred in granting the People's motion to disqualify defense counsel and that error deprived appellant of his federal and state constitutional right to counsel of his choice. This constitutional deprivation, without more, mandates reversal and a new trial. (*United States v Perez,* 325 F3d 115; *People v Caban,* 123 AD2d 356; *United States v Kliti,* 156 F3d 150; *People v Ortiz,* 76 NY2d 652; *People v Wandell,* 75 NY2d 951; *People v Gomberg,* 38 NY2d 307; *People v Mattison,* 67 NY2d 462; *People v Stewart,* 126 AD2d 943; *People v Arroyave,* 49 NY2d 264; *People v Salcedo,* 68 NY2d 130.) IV. The

trial court erred in failing to dismiss the indictment based on improper expert testimony and misleading grand jury instructions. (*People v Loizides*, 123 Misc 2d 334; *People v Taylor*, 150 Misc 2d 91; *De Long v County of Erie*, 60 NY2d 296; *Kulak v Nationwide Mut. Ins. Co.*, 40 NY2d 140; *People v Santi*, 3 NY3d 234; *Ortiz v City of New York*, 39 AD3d 359; *People v McCart*, 157 AD2d 194; *People v Champion*, 247 AD2d 901; *People v Huston*, 88 NY2d 400; *People v Wilkins*, 68 NY2d 269.) V. The court's evidentiary rulings at trial deprived defendant of his right to a fair trial in violation of article I, § 6 of the New York State Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. (*Selkowitz v County of Nassau*, 45 NY2d 97; *People v Goldstein*, 6 NY3d 119; *People v Peguero-Castillo*, 174 AD2d 1026; *Olden v Kentucky*, 488 US 227; *People v De Jesus*, 42 NY2d 519; *People v Montes*, 141 AD2d 767; *People v Ortiz*, 116 AD2d 531; *People v Rivera*, 116 AD2d 371; *People v Alicea*, 37 NY2d 601; *People v Steinhardt*, 9 NY2d 267.) VI. Defendant's statement should have been suppressed as his right to counsel under the Fifth and Sixth Amendments to the United States Constitution and article I, § 6 of the New York State Constitution had indelibly attached and his rights were violated when the representation afforded him by counsel in dealing with law enforcement authorities was grossly incompetent. (*People v Claudio*, 83 NY2d 76; *People v Iucci*, 61 AD2d 1; *United States v Cronic*, 466 US 648.) VII. The cumulative effect of the errors deprived defendant of the right to a fair trial. (*People v Crimmins*, 36 NY2d 230; *People v Pyne*, 223 AD2d 910; *People v Kitchen*, 55 AD2d 575.)

*William J. Fitzpatrick, District Attorney,* Syracuse (*James P. Maxwell* and *Victoria M. White* of counsel), for respondent. I. The evidence was legally sufficient to support defendant's conviction of aggravated criminally negligent homicide. (*People v Contes*, 60 NY2d 620; *Jackson v Virginia*, 443 US 307; *People v Bleakley*, 69 NY2d 490; *People v Boutin*, 75 NY2d 692; *People v Haney*, 30 NY2d 328; *People v Ricardo B.*, 73 NY2d 228; *People v Conway*, 6 NY3d 869; *People v Cabrera*, 10 NY3d 370; *People v Paul V.S.*, 75 NY2d 944; *People v McGrantham*, 12 NY3d 892.) II. The Appellate Division properly held that defendant failed to preserve his contention that the evidence was legally insufficient to establish that defendant possessed the requisite mens rea for criminally negligent homicide. (*People v Gray*, 86 NY2d 10; *People v Hines*, 97 NY2d 56, 678; *People v Bynum*, 70 NY2d 858; *People v Sweeney*, 15 AD3d 917, 4 NY3d 891; *People v Belge*, 41 NY2d 60.) III. The court properly disqualified defense

counsel. (*People v Gomberg,* 38 NY2d 307; *People v Tineo,* 64 NY2d 531; *People v Wandell,* 75 NY2d 951; *People v Harris,* 99 NY2d 202; *People v McDonald,* 68 NY2d 1; *People v Lombardo,* 61 NY2d 97; *People v Stewart,* 126 AD2d 943; *Wheat v United States,* 486 US 153; *United States v Gonzalez-Lopez,* 548 US 140; *People v Hall,* 46 NY2d 873, 444 US 848.) IV. The testimony and instructions presented to the grand jury did not impair the integrity of the grand jury or prejudice defendant. (*People v Huston,* 88 NY2d 400; *People v Wooten,* 283 AD2d 931, 96 NY2d 943; *People v Caracciola,* 78 NY2d 1021; *People v Darby,* 75 NY2d 449; *People v Gray,* 86 NY2d 10; *Mallory v Mallory,* 113 Misc 2d 912; *People v McCart,* 157 AD2d 194, 76 NY2d 861; *People v Sims,* 178 AD2d 993, 79 NY2d 953; *People v DaCosta,* 6 NY3d 181; *People v Calbud, Inc.,* 49 NY2d 389.) V. County Court's evidentiary rulings were legal, proper and did not deprive defendant of his right to a fair trial. (*People v Gray,* 86 NY2d 10; *People v LeGrand,* 8 NY3d 449; *People v Brown,* 97 NY2d 500; *People v Cronin,* 60 NY2d 430; *Selkowitz v County of Nassau,* 45 NY2d 97; *People v Sorge,* 301 NY 198; *People v Snell,* 234 AD2d 986, 89 NY2d 1015; *People v McIntyre,* 36 NY2d 10; *People v Straniero,* 17 AD3d 161, 5 NY3d 795; *People v Gonzalez,* 38 NY2d 208.) VI. County Court did not err in denying suppression of defendant's statements. (*People v Claudio,* 83 NY2d 76; *People v Steward,* 88 NY2d 496; *Kirby v Illinois,* 406 US 682; *People v Stultz,* 2 NY3d 277; *People v Baldi,* 54 NY2d 137; *People v Simmons,* 167 AD2d 924, 77 NY2d 843; *People v Borrell,* 12 NY3d 365; *People v Turner,* 5 NY3d 476; *People v Rivera,* 71 NY2d 705; *People v Droz,* 39 NY2d 457.) VII. Defendant received a fair trial. (*People v Lucie,* 49 AD3d 1253, 10 NY3d 936.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

In protecting a defendant's Sixth Amendment rights, a trial court may on occasion properly disqualify the attorney of a defendant's choosing due to that attorney's conflicts, actual or potential, even in the face of defendant's waiver of such conflicts. This is such a case.

In the late afternoon on April 23, 2006, defendant drove away from his home in Onondaga County on his motorcycle. On felony probation at the time, defendant could not own or operate a motor vehicle since he did not have his probation officer's permission to do so, and he was not licensed to drive a motorcycle in New York State. As defendant traveled west on Route 173

toward Jamesville, New York State Trooper Craig Todeschini observed defendant speeding and began to pursue him. Defendant admitted that when he turned left onto Route 91, he saw the trooper's vehicle behind him with its emergency lights on, but, rather than pulling over to the side of the road, "took off" in an attempt to "not get[ ] caught by the trooper."

Various witnesses observed the motorcycle, followed by the trooper's vehicle, traveling at a high rate of speed, estimated between 90 and 120 miles per hour, and weaving in and out of traffic along the two-lane country roads. As Trooper Todeschini entered the Hamlet of Pompey Hill, still in pursuit of defendant, he was unable to negotiate a turn in the road, lost control of his vehicle, and collided head-on into a tree, resulting in his immediate death. Three days after the accident, defendant voluntarily appeared at the New York State Police barracks for an interview and, after consulting with his attorney, gave an inculpatory statement.

Defendant was indicted on one count each of reckless driving, aggravated manslaughter in the second degree, and aggravated criminally negligent homicide. A jury acquitted him of the aggravated manslaughter count, but convicted him on the reckless driving and aggravated criminally negligent homicide counts. Defendant was sentenced as a predicate felon to seven years in prison with five years' postrelease supervision. The Appellate Division affirmed the judgment of conviction (59 AD3d 1112 [2009]). A Judge of this Court granted defendant's application for leave to appeal from that order (12 NY3d 852 [2009]). We now affirm.

## I.

■ Defendant first argues that the evidence was legally insufficient to support his conviction for aggravated criminally negligent homicide. In particular, defendant claims that there was insufficient evidence to establish that he acted with the requisite mens rea. This claim, however, is unpreserved. After the People rested, and again at the close of all the proof, defendant moved to dismiss the aggravated criminally negligent homicide count, arguing only that the evidence was insufficient to prove a "causal connection" between the defendant's conduct and the trooper's death. The court denied both motions. At no point did defendant argue, as he does now, that the evidence failed to establish he acted with the requisite mens rea. As we have previously explained, "where a motion to dismiss for

insufficient evidence [is] made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error" (*People v Gray*, 86 NY2d 10, 19 [1995], quoting *People v Cona*, 49 NY2d 26, 33 n 2 [1979]). Given defendant's failure to argue with particularity that the evidence was legally insufficient to prove that he acted with the requisite mens rea, we are foreclosed from reviewing that claim here.

Defendant also argues that the evidence is legally insufficient to establish a causal connection between his conduct and the death of the trooper. Although plainly preserved, this argument is without merit.

In *People v DaCosta*, we explained the law regarding causation in this context:

> "To be held criminally responsible for a homicide, a defendant's conduct must actually contribute to the victim's death by setting in motion the events that result in the killing. Liability will attach even if the defendant's conduct is not the sole cause of death if the actions were a sufficiently direct cause of the ensuing death. More than an obscure or merely probable connection between the conduct and result is required. Rather, an act qualifies as a sufficiently direct cause when the ultimate harm should have been reasonably foreseen" (6 NY3d 181, 184 [2006] [internal quotation marks, brackets and citations omitted]).

In that case, we held that the evidence was legally sufficient with respect to causation where a police officer, while chasing the fleeing defendant across a busy expressway, was struck and killed by a vehicle. Similarly, in *People v Matos* (83 NY2d 509 [1994]), evidence of causation was legally sufficient where a police officer fell down an air shaft to his death in the course of pursuing the fleeing defendant up a ladder and across a roof. These cases establish that where a defendant's flight naturally induces a police officer to engage in pursuit, and the officer is killed in the course of that pursuit, the causation element of the crime will be satisfied.

Defendant argues that the trooper was negligent by excessively speeding and losing control of his vehicle and violated State Police pursuit policy and Vehicle and Traffic Law § 1104, and that these acts were intervening and unforeseeable causative circumstances. However, it is plain that had defendant not fled, the trooper would not have engaged in the

high-speed chase that resulted in his death. Additionally, contrary to defendant's contention, there is no requirement that a defendant's vehicle actually make contact with the trooper's vehicle in order for the causation element to be satisfied. Rather, the essential inquiry is whether defendant's conduct was a sufficiently direct cause of the trooper's death, a question we answer in the affirmative. There can be no doubt that defendant's conduct set in motion the events that led to the trooper's death, and it was reasonably foreseeable that a fatal accident would occur as a result of defendant leading the trooper on a high-speed pursuit. Accordingly, the evidence was legally sufficient to establish a causal connection between defendant's conduct and the trooper's death.

## II.

Defendant next argues that County Court erred in granting the People's motion to disqualify his counsel. When the case was presented to the grand jury, the prosecutor called defendant's father and girlfriend. One of defendant's retained attorneys, Mary Gasparini, represented these witnesses and appeared with them in the grand jury room while they gave their testimony. Defendant's father testified that, on the evening of the accident, defendant returned home after riding his motorcycle and told his father not to let him ride his motorcycle until he was properly licensed because he was nearly pulled over by the police. Defendant also told his father that he had seen flashing lights, yet kept driving. Defendant's girlfriend testified that he called her shortly after the accident and said he was the motorcyclist the police were looking for and that he thought he was going to jail because the trooper had died. The next day, he called her and told her not to say anything about what he had told her the night before.

After the case had been presented to the grand jury, and four months before trial, the People moved to disqualify Gasparini and her partner, James Meggesto, on the ground that a potential conflict of interest existed based on Gasparini's representation at the grand jury of defendant's father and girlfriend who would be prosecution witnesses at trial. Defendant argued that if there was any conflict at all, it was only potential, and the issue could not be determined until after the testimony of the witnesses. Further, the defense argued that any potential conflict was waivable by defendant. Indeed, in open court, defendant indicated he was willing to waive any conflict.

At a subsequent court appearance, the court appointed an independent attorney to advise the defendant with respect to the conflict of interest and its implications. After a discussion with defendant, the independent counsel informed the court that defendant understood the conflict and was willing to waive it, after which defendant waived the conflict on the record. Nevertheless, the court granted the People's motion, concluding that defense counsel "must be disqualified in order to protect the defendant's rights to effective assistance of trial counsel and a fair trial free of any conflict of interest."

Although both defendant's father and girlfriend were mentioned at jury selection as potential witnesses, in the end neither actually testified. On appeal, the Appellate Division concluded that County Court did not abuse its discretion in granting the People's motion to disqualify defense counsel. We agree.

When examining a defense counsel's possible conflict of interest, a court must balance the defendant's constitutional right to the effective assistance of counsel against the defendant's right to be defended by counsel of his own choosing (*see People v Gomberg*, 38 NY2d 307, 312 [1975]). "A lawyer simultaneously representing two clients whose interests actually conflict cannot give either client undivided loyalty" (*People v Ortiz*, 76 NY2d 652, 656 [1990]), and, in such a case, the constitutional right to effective assistance of counsel may be "substantially impaired" (*Gomberg*, 38 NY2d at 312). Where there is a question as to a possible conflict, although the court "should not arbitrarily interfere with the attorney-client relationship," the court "has a duty to protect the right of an accused to effective assistance of counsel" (*id.* at 313). Thus, when the court is informed of a potential conflict, it must "ascertain, on the record, whether each defendant has an awareness of the potential risks involved in that course and has knowingly chosen it" (*id.* at 313-314).

In *Gomberg*, we explained that it is often difficult to assess these conflicts prospectively, before the court is fully aware of "the evidence to be adduced, the strategies to be followed and all defenses that may be plausibly asserted" (*id.* at 314). Thus, a defendant's willingness to waive the conflict at an early stage does not end the inquiry. As the Supreme Court has explained, even though there is a "presumption in favor of [the defendant's] counsel of choice," that right is not absolute and the court may decline to honor the defendant's waiver of a conflict:

"Unfortunately for all concerned, a [lower] court

must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict . . .

"For these reasons we think the [lower] court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses" (*Wheat v United States*, 486 US 153, 164, 162-163 [1988]).

Here, the trial court had the independent obligation to ensure that defendant's right to effective representation was not impaired. Although defendant's father and girlfriend never testified at trial, at the point in the proceedings when the disqualification motion was made, the parties were operating under the assumption that these witnesses might well be called. Specifically, the defense had indicated that it was possible they would proceed with the theory that defendant was not the person who had been driving the motorcycle. The trial court reasonably concluded that, if the defense chose this strategy at trial, it was highly likely that the prosecution would call defendant's father and girlfriend, who both possessed damaging evidence indicating that defendant had, indeed, been driving the motorcycle. Further, the court properly found that, if these witnesses were called, defense counsel would have been required to cross-examine them. An "attorney's decision whether and how best to impeach the credibility of a witness to whom he . . . owe[s] a duty of loyalty necessarily place[s] the attorney in a very awkward position, where prejudice to defendant need not be precisely delineated but must be presumed" (*People v McDonald*, 68 NY2d 1, 11 [1986] [internal quotation marks, citation and brackets omitted]). Moreover, had counsel not been disqualified under these circumstances, counsel's ability to objectively assess the best strategy for defendant to pursue may have been impaired. Defense counsel, obligated to maintain the confidences of the father and the girlfriend, might choose the

strategy least likely to cause the prosecution to call them as witnesses, thereby avoiding the need to cross-examine them. It would be difficult to repose confidence in counsel's single-minded protection of defendant's interests in these circumstances.

Our dissenting colleagues embrace a seemingly unworkable test in characterizing the conflict here as "more theoretical than real" and "not serious, given the common interest shared by defendant, his girlfriend and his father" (dissenting op at 332). Defendant's father and girlfriend may well have shared with defendant the desire to see him exonerated and avoid having the prosecutor call them to testify; indeed, that may be why they retained the same lawyers in the first instance. Their identity of interest with defendant would dissolve, however, upon either being called as a witness for the prosecution or, as noted, could have dissolved even earlier if defense counsel opted for a strategy tailored to avoid having to cross-examine them (*see People v Wandell*, 75 NY2d 951 [1990] [excoriating defense counsel and the prosecutor for failing to advise the trial court of defense counsel's representation of a prosecution witness in a separate civil action]; *see e.g. People v Stewart*, 126 AD2d 943 [4th Dept 1987] [concluding that a conflict was presented by counsel's representation of both a father and a son, and ordering a new trial on ineffective assistance of counsel grounds where, as here, the son made incriminating statements to his father who then provided information against his son to authorities]). More fundamentally, the trial court was tasked with considering this potential conflict without the benefit of hindsight, and the approach taken by the dissent would too narrowly limit the "substantial latitude" (*Wheat*, 486 US at 163) we all agree the trial court possessed in exercising its discretion under these circumstances.

A review of the record here reveals that the court carefully balanced defendant's right to counsel of his own choosing against his right to effective assistance of counsel. The court was quite properly reluctant to disqualify counsel, but acted well within the bounds of its discretion in concluding that allowing counsel to continue would "severely undermine [defendant's] ability to present a cogent defense." Further, there is no indication that the prosecution's disqualification request was manufactured in order to gain a tactical advantage (*see Wheat*, 486 US at 163). We also note that, contrary to defendant's argument, the court was under no obligation to wait until trial to

see if defendant's father and girlfriend would testify. If the court were required to delay resolution of the motion, and these witnesses were called to testify—which was a possibility even when the trial began—a mistrial would likely have been necessary at that late juncture.

Indeed, the circumstances of this case highlight that trial courts faced with a defendant willing to waive a conflict are often placed in the very difficult position of having their decision challenged regardless of the outcome. As the Supreme Court in *Wheat* explained, if the court honors the waiver, the defendant can later claim he was denied the effective assistance of counsel (*see id.* at 161). On the other hand, if the trial court refuses to honor the waiver, a defendant may well raise a challenge like the one presented here (*see id.*). Of course, the rights that must be balanced—the right to counsel of a criminal defendant's choosing and the right to effective assistance of counsel free of conflicts—both inure to a defendant's benefit. At times, however, as here, circumstances are such that the attorney a defendant chooses is also conflicted, in which case these rights may not be enforced in perfect harmony. Thus, as we have observed, a trial court's "discretion is especially broad when the defendant's actions with respect to counsel place the court in the dilemma of having to choose between undesirable alternatives, either one of which would theoretically provide the defendant with a basis for appellate review" (*People v Tineo*, 64 NY2d 531, 536 [1985]; *see generally People v Konstantinides*, 14 NY3d 1 [2009]). We trust that the trial courts, relying on their experience and sound judgment, will carefully evaluate the circumstances presented in such cases and strike an appropriate balance of the relevant interests. Under the circumstances presented here, the court did not abuse its broad discretion in granting the motion to disqualify defendant's counsel.

## III.

Defendant further argues that his statement to the police should be suppressed because his counsel was ineffective in advising him to give the statement. The record reveals that, when defendant voluntarily arrived at the trooper barracks three days after the accident, he was given *Miranda* warnings. Defendant spoke with troopers for a period of time, but then invoked his right to counsel, at which point the questioning immediately ceased. Defendant's then attorney, David Savlov, faxed a letter to the barracks indicating he represented defendant,

and appeared at the barracks shortly thereafter. After speaking with defendant, Savlov informed the troopers that defendant was willing to speak with them. The troopers again administered *Miranda* warnings to defendant, who subsequently gave a statement implicating himself in the motorcycle chase.

County Court denied defendant's motion to suppress the statement, and the Appellate Division affirmed, holding that "suppression was not required inasmuch as defendant received meaningful representation" (59 AD3d at 1114 [citation omitted]).

■ Even assuming, without deciding, the right to effective assistance of counsel attached prior to defendant's inculpatory statement and that suppression is the appropriate remedy where a statement is given as the result of ineffective assistance of counsel (*see People v Claudio*, 83 NY2d 76 [1993]), defendant here has failed to establish that he received ineffective assistance. In determining whether a defendant has been deprived of effective assistance of counsel, we must examine whether "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of representation, reveal that the attorney provided meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]). "[A]ll of the evidence must be weighed in context and as of the time of representation to assess the alleged deficient representation" (*People v Hobot*, 84 NY2d 1021, 1022 [1995]). Although rare, a single, substantial error by counsel may "so seriously compromise[ ] a defendant's right to a fair trial [that] it will qualify as ineffective representation" (*id.*). Only where the single error is sufficiently "egregious and prejudicial" will counsel be deemed ineffective (*People v Caban*, 5 NY3d 143, 152 [2005]).

The record reveals that, after arriving at the police barracks, Savlov was told by representatives of the District Attorney's Office that the District Attorney would look favorably upon defendant if he voluntarily gave a statement. Further, Savlov "was also told that the police had received information that the defendant was in fact the person being sought [and] . . . the names of other persons who had spoken to the defendant." Thus, this case is distinguishable from *Claudio* (83 NY2d at 78), in which we noted that defendant's counsel was grossly incompetent for advising defendant to give a statement despite that the police had indicated they had insufficient evidence against defendant and the prosecutor had informed the attorney that no plea bargain would be offered. Here, Savlov made the

strategic decision to encourage defendant to cooperate in order to receive favorable treatment once charges were brought. Under all the relevant circumstances, we cannot say that defendant received less than meaningful representation.

## IV.

We have considered defendant's other challenges to his conviction and find them to be without merit.

Accordingly, the order of the Appellate Division should be affirmed.

PIGOTT, J. (dissenting). Because, in my view, County Court committed reversible error in disqualifying defendant's counsel, I respectfully dissent. The court disqualified counsel based upon its finding that a potential conflict of interest—which was more theoretical than real—would, in its opinion, infringe upon defendant's right to the effective assistance of trial counsel.

It is hornbook law that, the right to counsel being a fundamental one, courts must "carefully scrutinize[ ]" the "judicial restriction or governmental intrusion" upon its exercise (*People v Tineo*, 64 NY2d 531, 536 [1985]). While a trial court should be accorded "substantial latitude" in refusing a defendant's waiver of even a potential conflict (*Wheat v United States*, 486 US 153, 163 [1988]), it is evident from this record that any potential conflict (which never came to fruition) was simply not serious, given the common interest shared by defendant, his girlfriend and his father.

When the court questioned defendant about his waiver, he remained steadfast that he wished to waive any potential conflict. The court then appointed an experienced criminal lawyer as independent counsel to meet with defendant to explain the ramifications of this choice. She met with defendant twice and sent him a letter explaining his rights, including the risks and benefits of waiving the conflict. That attorney reported to the court that it was her view that defendant understood the risks of waiving the conflict and still wished to do so. Notwithstanding these facts, County Court disqualified counsel. What is remarkable here is that no one seems to have had an objection to defendant retaining his counsel other than his adversary and the court.

An element of a defendant's federal and state constitutional right to counsel (US Const 6th Amend; NY Const, art I, § 6) "is the right of [the] defendant who does not require appointed counsel to choose who will represent him" (*United States v*

*Gonzalez-Lopez,* 548 US 140, 144 [2006]; *see People v Arroyave,* 49 NY2d 264, 270 [1980]). When a defendant is wrongly deprived of that right, the deprivation is "complete" at the time the defendant is erroneously prohibited from being represented by the counsel of his choice, and such error is considered a "structural" one not subject to harmless error analysis (*Gonzalez-Lopez* at 148, 150).

In support of its holding here, the majority relies on *People v Ortiz* (76 NY2d 652 [1990]) and *People v Gomberg* (38 NY2d 307 [1975]), both of which are "multiple representation" cases. The former case involved a garden-variety drug trial where defense counsel's loyalties were divided between the defendant he was representing and a testifying witness whose interests diverged from those of the defendant; the latter case involved a situation where the same attorney represented three defendants who were on trial for arson, and the defense asserted by one of the defendants allegedly shifted the blame to the other defendants. Of course, as the United States Supreme Court has recognized, "multiple representation of criminal defendants engenders special dangers of which a court must be aware" (*Wheat,* 486 US at 159). But that is not the situation we are presented with here, where neither defendant's father nor his girlfriend was facing a criminal charge, nor were they targets of the investigation.

The Supreme Court has recognized "a presumption in favor of [a defendant's] counsel of choice" which may be overcome by either a showing of actual conflict or "a serious potential for conflict" (*Wheat,* 486 US at 164). It is undisputed in this instance that, at most, there was a potential conflict because defendant's interests might have placed defense counsel under inconsistent duties in the future had defendant's father and girlfriend been called as witnesses at trial (*United States v Perez,* 325 F3d 115, 125 [2d Cir 2003], citing *United States v Kliti,* 156 F3d 150, 153 n 3 [2d Cir 1998]). But such a conflict, waivable so long as the court is satisfied that it is knowing and intelligent (*Perez,* 325 F3d at 125), could hardly be considered serious, and clearly not enough to overcome the presumption in favor of affording defendant his constitutional right to counsel of his own choosing.

The majority and the People latch onto the premise that, at the time of the disqualification motion, it was the defense's theory of the case that defendant was not the operator of the motorcycle, and that the "damaging" testimony by defendant's father and girlfriend before the grand jury all but ensured that

they would be called as witnesses. However, the defense advised the court that, without discovery, it had yet to determine its trial strategy. Moreover, a simple reading of the grand jury testimony of defendant's father and girlfriend, who were not called to testify before the second grand jury,* indicates that their testimony was not substantially different from the statement defendant made to the police just three days after the crash. If anything, the testimony of defendant's father and girlfriend was no more damaging than defendant's own statement to the police which, upon a fair reading, rendered it unlikely that defendant would be pursuing a "mistaken identity" defense as the court surmised in its decision and order disqualifying defense counsel.

In matters where there is an apparent conflict, the trial courts have a duty to protect a defendant's right to the effective assistance of counsel without concomitantly "arbitrarily interfer-[ing] with the attorney-client relationship" (*Gomberg*, 38 NY2d at 313). Where, as here, the potential conflict is theoretical at best because the witnesses are united with the defendant and the defendant has been adequately apprised of the risks of waiving any potential conflict and agrees to do so, the defendant should not be deprived of his fundamental right to counsel of his own choosing. Absent any institutional concerns, such as where the attorney's representation would jeopardize the integrity of the judicial proceedings, courts should not "assume too paternalistic an attitude in protecting the defendant from himself" (*Perez*, 325 F3d at 126, quoting *United States v Curcio*, 694 F2d 14, 25 [2d Cir 1982]).

There being no indication that allowing disqualified counsel to represent defendant in these circumstances would jeopardize the integrity of the proceedings, I would reverse the order of the Appellate Division and grant defendant a new trial with counsel of his choosing.

Judges CIPARICK, GRAFFEO, READ and JONES concur with Chief Judge LIPPMAN; Judge PIGOTT dissents and votes to reverse in a separate opinion in which Judge SMITH concurs.

Order affirmed.

---

* The second grand jury proceeding occurred in September 2006 after disqualification of defense counsel, the indictment from the first grand jury proceeding having been dismissed due to the alleged conflict.