NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5235-18T1

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

LUCIAN FAULCON,

     Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 27, 2020**
>
> **APPELLATE DIVISION**

Submitted December 4, 2019 – Decided January 27, 2020

Before Judges Koblitz, Whipple and Mawla.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 19-03-0150.

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for appellant (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Brooke M. Barnett, attorney for respondent.

The opinion of the court was delivered by

KOBLITZ, P.J.A.D.

We hold that defense counsel who represented a State witness who was questioned in the investigation of a murder may not then represent the defendant

in the same case. On leave granted, the State argues that because defense counsel was present for the witness's interview with detectives, she will be unable to effectively cross-examine the witness at trial, materially limiting her ability to represent defendant Lucian Faulcon. The anticipated testimony of the witness involves his identification of a phone number that the police connected to defendant and used to trace defendant's whereabouts at the time of the murder. The trial court found no evidence in the record to support a determination that defense counsel's former representation of the witness is directly adverse or materially limits defense counsel's ability to represent defendant, and thus denied the State's motion to recuse defense counsel. We disagree and reverse.

I.

On May 19, 2018, Paris Lee was shot and killed behind a nightclub in Elizabeth. Video footage from the club revealed that at around 2:30 a.m., three individuals wearing hoods around their faces exited a 2003 Lexus sedan, walked towards the crime scene, surrounded the victim in the parking lot and shot him.

The car was registered to defendant's brother. The police located and searched the Lexus, recovering numerous personal items belonging to defendant, including prescription medication, a wallet containing identification,

and bank and insurance cards. Defendant's brother told the police that defendant drove the Lexus.

Based on the evidence recovered in the investigation and witness statements, police identified a cell phone number used by defendant. Using phone records, police were able to track the whereabouts of the cell phone on the day of the shooting. Police also found phone numbers in contact with defendant's phone before and after the shooting. One of those numbers belonged to the witness, who had spoken to defendant less than an hour before and after the killing.[1]

On November 16, 2018, the witness was interviewed for the first time by detectives at the Union County Prosecutor's Office, after which he was served with a subpoena to testify before a grand jury. The witness appeared to testify, but was dismissed after he admitted to being under the influence of marijuana.

The day before the witness was next scheduled to testify, attorney Brooke M. Barnett agreed to accompany the witness to an interview with detectives at the Union County Prosecutor's Office in lieu of testifying before a grand jury. During the interview, the witness was asked to identify his own phone number as well as additional phone numbers, and was asked whether or not he had heard

---

[1] We see no need to identify the witness by name.

anything about the murder of Paris Lee. The witness indicated that he had not heard anything about the murder and identified his own phone number only.

Defendant was indicted for first-degree murder, N.J.S.A. 2C:11-3(a)(1); first-degree conspiracy to commit murder, N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:5-2(a)(1); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1).

A month later, Barnett filed a notice of substitution to represent defendant. In response, the State filed a motion to disqualify Barnett as defendant's counsel.

II.

"[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010) (citing J.G. Ries & Sons, Inc. v. Spectraserv, Inc., 384 N.J. Super. 216, 222 (App. Div. 2006)). Where there are "no factual disputes to resolve on credibility grounds and only legal conclusions to draw, we are not required to defer to the trial judge's findings." State v. Bruno, 323 N.J. Super. 322, 331 (App. Div. 1999). "The burden rests with the State to demonstrate a disqualifying conflict exists." State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015).

"[A] non-indigent defendant's Sixth Amendment right to counsel encompasses the right to be represented by the counsel of his [or her] choosing, as the Sixth Amendment 'commands . . . that the accused be defended by the counsel he [or she] believes to be best.'" Hudson, 443 N.J. Super at 283 (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 146 (2006)). A defendant's right to choose counsel is not absolute. State v. Kates, 426 N.J. Super. 32, 45 (App. Div. 2012), aff'd, 216 N.J. 393 (2014). The right to choose counsel is "circumscribed by the court's power to guard against conflicts of interest, and to vindicate the court's 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" Ibid. (quoting Wheat v. United States, 486 U.S. 153, 160 (1988)).

The Rules of Professional Conduct on conflicts of interest provide:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may

represent a client if: (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation . . . (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (3) the representation is not prohibited by law; and (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

[RPC 1.7.]

RPC 1.9 addresses a lawyer's duties to former clients and provides, in relevant part:

(a) A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

[RPC 1.9(a).]

Opinion 426 published by the Advisory Committee on Professional Ethics on May 31, 1979, which is directly on point, addresses the following scenario:

Defense counsel for a criminal defendant inquires whether he may represent the defendant after counseling persons subpoenaed to appear before grand juries which investigated the crime for which the defendant was ultimately indicated [sic]. Witness 1 was subpoenaed and testified before Grand Jury 1 being represented by the inquiring attorney. No indictment was returned. Witness 2, advised by the inquirer,

6

refused to answer questions to Grand Jury 2. Shortly thereafter, Grand Jury 2 indicted the defendant, who engaged the inquirer as defense counsel. Witness 2 had previously given the police an oral statement, and after indictment the inquirer withdrew from any representation of witnesses 1 and 2, and witness 2 testified before Grand Jury 2 suffering a "lapse of memory." Additionally, counsel represents in a civil suit a witness 3, who testified before Grand Jury 1.

The Committee concluded that "[t]he witness' self-interest in cooperating fully, honestly and openly before the grand jury or testifying for the State, conflicts directly with the not too unnatural desire of the attorney in such circumstances to avoid the presentation of any evidence that would embarrass his present defendant." N.J. Advisory Comm. on Prof'l Ethics, Op. 426 (1979). The Committee referred to Opinion 278, which cites to Canon 5 of the Code of Professional Responsibility of the American Bar Association:

> The professional judgment of a lawyer shall be exercised, within the bounds of the law, solely for the benefit of his [or her] client and free of compromising influences and loyalties. Neither his [or her] personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his [or her] loyalty to his client. (Emphasis added).

Opinion 426 further provides:

> Neither the informed consent of the clients, nor the disassociation of the inquirer from the potential witnesses against his defendant removes the ethical objections. The appearance of impropriety would

7

certainly be present were such a representation permitted. See ABA Comm. on Professional Ethics and Grievances, Opinion 16 (1929). Here, the appearance of the lawyer representing the defendant and a potential witness against the defendant in a homicide makes the comments of Opinion 278 particularly applicable.

In commenting upon former Canon 6 of the Canons of Professional Ethics (predecessor to DR 5-101(A), supra), Drinker in his Legal Ethics (1953) notes at p. 105: "even where all parties agree, the appearance of a lawyer on both sides of the same controversy, particularly in cases of some notoriety, will often give an impression to the public which is most unfortunate for the reputation of the bar, and which of itself should be decisive."

Aside from the appearance of impropriety, the matter has the potential for adversely affecting the administration of justice. Thus, such representation directly involves the public interest, and is particularly improper and undesirable. N.J. Advisory Committee on Professional Ethics, Opinion 4, 86 N.J.L.J. 357 (1963). The Supreme Court of New Jersey in Schear v. Elizabeth, 41 N.J. 321, 329 (1964) [(]quoting Ahto v. Weaver, 39 N.J. 418, 431 (1963)[)], noted that such representation is absolutely barred where a conflict affecting the public interest is involved.

[N.J. Advisory Comm. on Prof'l Ethics, Op. 426 (1979) (emphasis added).]

The prohibition against the appearance of impropriety for attorneys is no longer a valid consideration. Hudson, 443 N.J. Super. at 292. Yet, the prohibition against impairing the fair administration of justice remains strong.

8

See Supreme Court of New Jersey, Administrative Determinations in Response to the Report and Recommendation of the Supreme Court Commission on the Rules of Professional Conduct, Commission Comment to RPC 1.7 (Sept. 10, 2003), reprinted in Kevin H. Michels, New Jersey Attorney Ethics, Appendix A1 at 1250 (2020) (noting that the appearance of impropriety provisions in the RPCs are no longer appropriate "[b]ecause of their vagueness and ambiguity," however, "courts have the independent authority, which they have exercised, to take corrective action when the risk of improper conflict threatens the administration of justice.").

Although no case in New Jersey is directly on point, other jurisdictions have considered this situation. In People v. Carncross, 927 N.E.2d 532, 534 (N.Y. 2010), the defendant motorcyclist was charged with negligent homicide and related offenses after a trooper pursuing him at a high rate of speed was killed in a crash. The disqualification issue arose because one of defendant's attorneys had represented defendant's father and girlfriend in their grand jury testimony in the same case. Id. at 535. The father testified that defendant told him on the evening of the incident that he had almost gotten pulled over by the police, and the girlfriend reported that defendant had admitted to her that he was the motorcyclist for whom the police were then searching. Id. at 535–36.

The New York Court of Appeals concluded that, although defendant was willing to waive his right to conflict-free counsel and neither the father nor girlfriend were ultimately called to testify, the trial court's decision to disqualify counsel was within its discretion. Id. at 536–37. At the time the decision was made, those witnesses were expected to testify, and counsel's ethical duty to her former clients would compromise her ability not only to effectively cross-examine them, but also to assess defendant's best trial strategy. Id. at 537. The court reasoned that counsel, "obligated to maintain the confidences of the father and the girlfriend, might choose the strategy least likely to cause the prosecution to call them as witnesses, thereby avoiding the need to cross-examine them" at all. Ibid. All things considered, "[i]t would [have] be[en] difficult to repose confidence in counsel's single-minded protection of defendant's interests in these circumstances." Ibid.

Similarly, in State ex rel. Kinder v. McShane, 87 S.W.3d 256, 258 (Mo. 2002), where the defendant was accused of murdering his mother and then burning the family's house down, defense counsel previously represented defendant's father at the father's deposition in the same matter. There, the father testified to defendant's behavioral problems and the father's own prior statements to police, including his belief that the defendant had committed the

crime and that, had the father been home at the time, the defendant would have killed him as well. Id. at 258–59.

The Supreme Court of Missouri acknowledged that counsel no longer represented the father but concluded that the clear conflict presented by counsel's duties to his former client required disqualification. Id. at 262. The father was a key witness, would likely give incriminating testimony tracking his deposition, and had himself no alibi for the murder, necessitating that counsel impeach or throw suspicion on him, tasks complicated by their former attorney-client relationship. Ibid. Moreover, the court rejected the notion that "in all but the rarest cases, once a defendant says that he waives any conflict, the court's involvement must end." Id. at 263. It explained:

> To the contrary, where the conflict of interest is an actual one, or the potential for a conflict of interest at trial is a serious one, such as is the case here, then "such a waiver, . . . does not necessarily resolve the matter, for the trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver."
>
> [Ibid. (quoting United States v. Stewart, 185 F.3d 112, 122 (3d Cir. 1999)).]

Lastly, in United States v. Messino, 852 F. Supp. 652, 653–54, 656 (N.D. Ill. 1994), the defendant, charged with cocaine distribution and a series of

related offenses, waived his right to conflict-free counsel in order to continue his representation by an attorney who had represented two witnesses before the very grand jury that issued his indictment, albeit in a manner that directly incriminated only his co-defendants. The District Court found that defendant's waiver had been knowing and voluntary and acknowledged that the witnesses would not implicate him directly at trial, but nonetheless concluded that counsel's prior representation of the witnesses would hamper his ability to effectively conduct cross-examination, significant to his escaping liability in this conspiracy case. Id. at 656. The conflict thus presented a "compromise of justice" that could not otherwise be remedied. Ibid.

For counsel to represent defendant after representing a witness who gave a statement to the police would impair the fair administration of justice. Defendant's right to hire the attorney of his choosing must give way to the public's right to a fair trial process. The witness's lack of full cooperation with the State, in not acknowledging whom he spoke to shortly before and after the killing, presents a clear conflict between the witness' best interest in being fully truthful while under oath and defendant's interest in an acquittal. How can defense counsel cross-examine the witness while maintaining his confidentiality should he change positions on the stand and further implicate defendant? The

fact that both clients waive any conflict in this situation is insufficient. The likelihood that the clients are united in their desire to see defendant vindicated, in addition to their inability to envision possible trial scenarios, makes such a waiver untenable. Defense counsel must be disqualified to ensure the fair administration of justice.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5235-18T1